# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. _____ - Civ (                            )

**MARJAM SUPPLY COMPANY OF**
**FLORIDA, LLC and MARJAM**
**SUPPLYCOMPANY,**

**Plaintiffs,**

vs.

**PLITEQ, INC., ULTIMATE RB, INC. and**
**PAUL DOWNEY,**

**Defendants.**
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, **MARJAM SUPPLY COMPANY OF FLORIDA, LLC** ("MFLA"), a

Florida limited liability company with its principal offices and place of business located at 475

NE 185th Street, Miami Gardens , Florida 33179, and **MARJAM SUPPLY COMPANY**

**("MNY")** (MFLA and MNY hereinafter are sometimes referred to collectively as **"Marjam"**),

a New York corporation with its principal offices and place of business located at 885 Conklin

Street, Farmingdale, New York  11735, by and through their attorneys, Boyes & Farina, P.A. and

Lebensfeld Sharon & Schwartz P.C., and as and for their Complaint herein against the

Defendants **PLITEQ, INC.**("**Pliteq**"), a foreign corporation believed to be incorporated by and

under the laws of the Province of Ontario, Canada, with its principal offices and place of

business located at 1370 Don Mills Road, Unit 300, Toronto, ON, Canada, **ULITMATE RB,**

**INC. ("RB"),** an Oregon corporation, with its principal offices and place of business located at

904 NE 10th Avenue, McMinnville, Oregon 97128, and (ii) **PAUL DOWNEY,** an individual

believed to be residing within the Province of Ontario, Canada, allege as follows:

## JURISDICTION AND VENUE

1.      This Court possesses subject matter jurisdiction over Marjam's claims as

hereinafter set forth, pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1338(b), based upon Federal

question jurisdiction and the Lanham Act, 15 U.S.C. §1125.

2.      This Court possesses subject matter jurisdiction over Marjam's claims, as

hereinafter set forth, pursuant to 28 U.S.C. §1338(b), based upon the diversity of citizenship

existing between MFLA, MNY and each defendant, and further because the amount in

controversy exceeds the sum or value of $75,000.00.

3.      This Court possesses subject matter jurisdiction over Marjam's claims asserted

pursuant to F.S.A. §501.204 and under the common law, as hereinafter set forth, pursuant to 28

U.S.C. §1367 and the principles of pendent jurisdiction

4.      Venue properly is laid in this District pursuant to 28 U.S.C. §1391(b)(2), in that a

substantial part of the events and omissions giving rise to Marjam's claims herein occurred in

this District.

## THE PARTIES

5.      Plaintiff MNY is one of the largest building materials distributors and suppliers in

the United States, operating 35 super centers in 12 States that serve the entire East Coast.

Marjam sells acoustical ceiling systems, doors and frames, windows, roofing, siding, flooring,

insulation, tools, hardware, equipment, wall systems, lumber, plywood, adhesives, masonry and

specialty items to builders, contractors, architects, engineers, governmental bodies and the

public.

6.      Plaintiff MFLA, an affiliate of MNY, is one of the largest building materials distributors and suppliers within the State of Florida.  It sells, distributes and supplies, both for the domestic and export markets, a large range of construction materials and related building products to builders, contractors, architects, engineers, governmental bodies and to the public at large in Florida, including in and around Miami-Dade county.

7.      Defendant Pliteq is a supplier of rubber sound isolation products which are manufactured by an unaffiliated company known as Ultimate RB, to which Pliteq affixes its private label.

8.      Pliteq markets, advertises and sells its products, including the product line which is the subject of this action and which is sold under the tradename "GenieMat RST," throughout the United States, including in South Florida.

9.      Upon information and belief, Defendant Downey is the President and Chief Executive Officer of Pliteq.

10.     Defendant RB is a rubber recycler and manufacturer of recycled rubber acoustical underlayment for both residential and commercial applications.

**THE PRODUCTS AND PRIOR RELATIONSHIP OF THE PARTIES**

11.     Until in or about August 2015 and for a number of years prior thereto, MFLA and MNY acted as distributors and suppliers of rubber acoustical underlayment products manufactured by RB for Pliteq, and purchased by Marjam from Pliteq under the tradename "GenieMat RST."  Marjam primarily sold the GenieMat RST products within the State of Florida, and in the States of New York and New Jersey as well.

12.     GenieMat RST is a flat rubber, resilient, reduced sound transmission mat which is utilized directly beneath hard surface floor finishes and over concrete and wood construction, in

3

order to provide sound attenuation control in multi-family housing, high-rise and commercial buildings.

13.     GenieMat RST is manufactured by RB and private labeled to Pliteq in various thicknesses, each of which having different sound insulation qualities. See Exhibit "A" hereto.

14.     RB describes, advertises, warrants, represents and sells it recycled rubber acoustical underlayment products "in thicknesses from 2mm to 12mm for both residential and commercial applications." See Exhibit "B" hereto.

15.     Pliteq describes, advertises, warrants and represents its GenieMat RST line of rubber acoustical underlayment products to the trade and public, including to its distributors and re-sellers (such as Marjam): (i) to be of certain specified thicknesses (e.g., GenieMat RST02 is represented by Pliteq as having a thickness of 2 mm; GenieMat RST05 is represented by Pliteq as having a thickness of 5 mm; and GenieMat RST10 is represented by Pliteq as having a thickness of 10 mm); (ii) after laboratory  testing as possessing certain "STC Ratings," i.e., having specific "sound transmission coefficients" and (iii) as having  a specific effectiveness for floor coverings in reducing impact sound transmission through concrete floors.

16.     Pliteq describes, advertises, warrants and represents its GenieMat RST product line to the trade and public, including its distributors and re-sellers (such as Marjam), as follows: "It's not magic, it's engineering."  In fact and as described herein below, a more apt description of Pliteq's GenieMat RST product line would be:  "It's not magic, it's fraud."

**MARJAM'S SALE OF GENIEMAT RST AND DISCOVERY OF PLITEQ'S AND RB'S FALSE, FRAUDULENT AND MISLEADING DESCRIPTIONS OF THE PRODUCT LINE AND MISREPRESENTATIONS OF FACT**

17.     During the years 2013-2015, Marjam purchased approximately $1.6 million of GenieMat RST products from Pliteq (in various iterations of represented thicknesses, and having

certain sound insulation attributes depending upon the thickness of the represented specific GenieMat RST product purchased). The GenieMat RST products purchased by Marjam generally were specified by Marjam's customers' architects, engineers and/or owners, and were sold by Marjam primarily for use in numerous high-rise apartment and condominium projects under construction within South Florida and in particular, Miami.

18.     In July 2015, Marjam purchased from Pliteq 256,000 square feet of GenieMat RST12, which was advertised and represented by Pliteq to have a thickness of 12 mm and to result in an STC rating of 52. Marjam sold that product to its customer, General Property Construction of Doral, Florida, a sub-contractor retained by Suffolk Construction (the general contractor) and ZOM Living (the developer; collectively, "**ZOM**"), who were then constructing a new high-rise residential condominium project in Miami known as the "Met 3 Project" (the "**Met 3 Order**").

19.     GenieMat RST12 was to be utilized by ZOM in the Met 3 Project as the sound attenuation underlayment to be placed and glued to the concrete floors of the high-rise building, which then would be covered with finished flooring in order to provide adequate sound insulation for the occupants of each of its condominium units.

20.     ZOM's acoustical engineers specified the thickness of the sound insulation underlayment required and the STC rating and, based upon those specifications, MFLA purchased the required GenieMat RST12 products from Pliteq – which were manufactured by RB - specifically to fulfill the Met 3 Order.

21.     Following Marjam's purchase and delivery to ZOM of the required quantity of GenieMat RST12, ZOM's acoustical engineers tested the products on site and discovered that instead of the product having an STC rating of 52, it actually only had an STC rating of 47 or

5

less.  As a consequence, GenieMat RST12 did not provide the required sound insulation

attributes necessary for the Met 3 Project.

22.     As a direct result of the foregoing events, ZOM cancelled the MET 3 Order,

returned the mislabeled and mis-described GenieMat RST12 products to Marjam, and instead

purchased a competitive product (Proflex RU-125 acoustical underlayment) from one of

Marjam's competitors, which product achieved the STC levels required by ZOM and its

acoustical engineers.

23.     By reason of the foregoing, MFLA lost profits on the cancelled sale of the

GenieMat RST12 products to ZOM in the amount of $87,040.00, in addition to sustaining

substantial actual damages and incidental costs and expenses.  Furthermore, because of Pliteq's

and RB's mis-description and misrepresentation of the product, Marjam cannot responsibly re-

sell those products as they are defective and falsely described.

24.     Upon Marjam's subsequent testing of the GenieMat RST product line, it further

discovered, among other things and by way of example only, that GenieMat RST02 sound

insulation underlayment, advertised and represented by Pliteq as having a thickness of 2 mm and

purportedly providing a 16 decibel reduction in impact sound transmission, actually is only 1.85

mm thick or less, and provides significantly less impact sound protection.  Similarly,  Pliteq's

GenieMat RST05 product line, advertised and represented by Pliteq as having a thickness of 5

mm and providing a 19 decibel purported reduction in impact sound transmission, actually has a

thickness of only 4.8 mm or less, and provides significantly reduced sound attenuation.

25.     Furthermore, Pliteq's "Data Sheets" and "Product Specifications" for its

GenieMat RST line of products which have been, and are continuing to be, published on its

website, and/or otherwise disseminated to the trade and public (including Marjam), are inherently fraudulent and misleading in other significant respects.

26.     By way of example, GenieMat RST02 is described, represented and sold by Pliteq to be "GenieMat RST02 1/8."  One-eighth of an inch actually equals <u>3.175 mm</u> in thickness, which is even greater than the misrepresented "2mm" advertised.

27.     Upon investigation, Marjam further has discovered that Pliteq intentionally and knowingly orders rubber acoustical underlayment products from RB for shipment to Marjam and perhaps others, with specific instructions to RB to mislabel the products as to thickness, an unlawful request with which Ultimate RB knowingly complied and implemented.

28.     Marjam has discovered that Pliteq ordered acoustical underlayment products from RB described as RB's "black 106S 48 <u>1.85mm</u>" product (emphasis supplied), and directed RB to mislabel it as "GenieMat RST02," which product Pliteq advertises and represents to the trade and public, including Marjam, as being <u>2 mm</u> or more in thickness – a fact well-known to RB.

29.     Similarly, Pliteq ordered acoustical underlayment products from RB described as RB's "black 1065 48 <u>5MM</u>," and directed RB to mislabel the product as "GenieMat RST06," which product Pliteq advertises and represents to the trade and public, including Marjam, as being <u>6 mm</u> or more in thickness. – another fact well-known to RB.

30.     Finally, Marjam has discovered that Pliteq's acoustical test results for its GenieMat RST product line, as advertised, published and represented in its "Data Sheets" and "Product Specifications," are false and fraudulent and/or intentionally misleading, in that the test results fail to disclose that the products were tested without adherence to an under floor with glue, the approved and standard method of utilization of the products, thereby resulting in an overstatement of their sound attention qualities.   When properly tested and installed with glue as

7

utilized in actual installations, GenieMat RST products produce significantly less sound attenuation – a fact well-known to both RB and Pliteq.

31.     Marjam reasonably estimates that it has suffered in excess of $320,000 in actual damages, measured by the imputed differences in the relative prices applicable to the varying misrepresented thicknesses of the GenieMat RST products it has purchased from Pliteq. Additionally, Marjam has suffered additional actual damages by reason of the unsaleable inventory of GenieMat RST products presently remaining in its inventory, aggregating approximately $50,000.

32.     Upon information and belief, RB's and Pliteq's intentional, fraudulent and deceptive advertising and misrepresentation of the GenieMat RST product line to Marjam and other similarly situated purchasers and to the consuming public as aforesaid, has been, and continues to be, knowingly and purposely directed and implemented by Downey.

### AS AND FOR A FIRST CAUSE OF ACTION – VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT AGAINST ALL DEFENDANTS

33.     Marjam repeats and realleges paragraphs "1" through "32" of this Complaint as if here fully set forth.

34.     RB's, Pliteq's and Downey's intentional and fraudulent conduct, as hereinabove set forth, constitute unfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts or practices in the conduct of a trade or commerce, in violation of Florida's Deceptive and Unfair Trade Practices Act, F.S.A. §501.24 ("**FDUTPA**").

35.     As a proximate result of RB's, Pliteq's and Downey's multiple violations of the FDUTPA as aforesaid, MFLA and MNY have suffered substantial actual damages in excess of

$320,000, the precise amount of which to be established during discovery and to be presented at trial.

36.     RB's, Pliteq's and Downey's unlawful actions as aforesaid were, and continue to be, undertaken intentionally and maliciously, and in wanton and willful disregard of the rights of Marjam, the trade and the public.

## AS AND FOR A SECOND CAUSE OF ACTION –
## VIOLATION OF THE LANHAM ACT AGAINST ALL DEFENDANTS

37.     Marjam repeats and realleges paragraphs "1" through "32" of this Complaint as if here fully set forth.

38.     In connection with their sale of GenieMat RST products, Pliteq and Downey have utilized, and continue to utilize, false and misleading descriptions of fact, and/or false or misleading representations of fact, with regard to the subject products, as hereinabove set forth.

39.     Pliteq's and Downey's utilization of false and misleading descriptions of fact, and/or false or misleading representations of fact, with regard to their GenieMat RST line of products in commercial advertising or promotion, has misrepresented and continues to misrepresent, the true nature, characteristics and qualities of Pliteq's goods, services and commercial activities.

40.     RB's, Pliteq's and Downey's intentional and fraudulent conduct, as hereinabove set forth, constitute multiple violations of Section 43(a) of the Lanham Act, 15 U.S.C.A. §1125(a)(1).

41.     As a proximate result of RB's, Pliteq's and Downey's multiple violations of the Lanham Act as aforesaid, MFLA and MNY have suffered substantial damages in excess of $457,040, the precise amount of which to be established during discovery and to be presented at trial.

42.     Pliteq's and Downey's unlawful actions as aforesaid were, and continue to be, undertaken intentionally and maliciously, and in wanton and willful disregard of the rights of Marjam, the trade and the public.

### AS AND FOR A THIRD CAUSE OF ACTION –
### BREACH OF EXPRESS WARRANTY AGAINST PLITEQ

43.     Marjam repeats and realleges paragraphs "1" through "32" of this Complaint as if here fully set forth.

44.     In connection with the sale of GenieMat RST products to Marjam, Pliteq made affirmations of fact and promises to Marjam that the products conformed to its "Data Sheets" and "Product Specifications" as hereinabove detailed and set forth.

45.     In connection with the sale of GenieMat RST products to Marjam, Pliteq represented to Marjam that the description of the goods set forth in its "Data Sheets" and "Product Specifications" was accurate and truthful.

46.     Pliteq's aforesaid affirmations of fact, promises and representations constituted part of the basis of the bargain between Pliteq and Marjam.

47.     Pliteq's affirmations of fact, promises and representations as aforesaid constituted express warranties pursuant to F.S.A. §672.313 of Florida's Uniform Commercial Code, which were breached.

48.     As a proximate result of Pliteq's breaches of its express warranties as aforesaid, MFLA and MNY have suffered substantial damages in excess of $457,040, the precise amount of which to be established during discovery and to be presented at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION – BREACH OF
## IMPLIED WARRANTY OF MERCHANTABILITY AGAINST PLITEQ

49.     Marjam repeats and realleges paragraphs "1" through "32" of this Complaint as if here fully set forth.

50.     Pliteq was a "merchant" with respect to the sales of GenieMat RST products to Marjam.

51.     Pursuant to F.S.A. §672.314 of Florida's Uniform Commercial Code, implied in the agreement(s) for the sale of GenieMat RST products by Pliteq to Marjam, as hereinabove set forth, were warranties that the subject products were merchantable in that they would pass without objection in the trade under the contract description, were of fair average quality within the description, were fit for the ordinary purposes for which they were to be used, and were adequately labelled and conformed to the promises and affirmations of fact made by Pliteq on their labels.

52.     As hereinabove described, the GenieMat RST products sold by Pliteq to Marjam materially failed to comply with the warranty of merchantability implied in the agreement(s) of sale between Pliteq and Marjam.

53.     As a proximate result of Pliteq's breaches of the implied warranty of merchantability as aforesaid, MFLA and MNY have suffered substantial damages in excess of $457,040, the precise amount of which to be established during discovery and to be presented at trial.

## AS AND FOR A FIFTH CAUSE OF ACTION – BREACH OF IMPLIED
## WARRANTY OF FITNESS FOR PARTICULAR PURPOSE AGAINST PLITEQ

54.     Marjam repeats and realleges paragraphs "1" through "32" of this Complaint as if here fully set forth.

55.     At the times Pliteq agreed with and sold GenieMat RST products to Marjam as aforesaid, Pliteq had reason to know of the particular purpose for which the goods were required, and that Marjam was relying on Pliteq's skill or judgment to select or furnish suitable goods.

56.     As hereinabove set forth, the GenieMat RST products sold to Marjam by Pliteq were not fit for the particular purpose for which the goods were required and in particular, in connection with the Met 3 Order, all in violation of F.S.A. §672.314 of Florida's Uniform Commercial Code.

57.     As a proximate result of Pliteq's breaches of the implied warranty of fitness for a particular purpose as aforesaid, MFLA and MNY have suffered substantial damages in excess of $457,040, the precise amount of which to be established during discovery and to be presented at trial.

## AS AND FOR A SIXTH CAUSE OF ACTION – COMMON LAW FRAUD AGAINST PLITEQ AND DOWNEY

58.     Marjam repeats and realleges paragraphs "1" through "32" of this Complaint as if here fully set forth.

59.     Pliteq's statements of fact as aforesaid with respect to the thicknesses and sound attenuation qualities of the GenieMat RST products purchased by Marjam were false.

60.     At the time Pliteq made the statements of fact intending Marjam to rely thereon, Pliteq knew that they were false.

61.     Marjam justifiably relied on Pliteq's statements of fact.

62.     Pliteq, at Downey's express direction and with his knowledge, made the aforesaid statements of fact intentionally and maliciously, and in wanton and willful disregard of the rights of Marjam, the trade and the public.

63.     As a proximate result of Pliteq's and Downey's fraudulent conduct as aforesaid, MFLA and MNY have suffered substantial damages in excess of $457,040, the precise amount of which to be established during discovery and to be presented at trial.

**AS AND FOR A SEVENTH CAUSE OF ACTION –
BREACH OF CONTRACT AGAINST PLITEQ**

64.     Marjam repeats and realleges paragraphs "1" through "32" of this Complaint as if here fully set forth.

65.     Pliteq's actions and conduct as hereinabove set forth, constituted material breaches of its agreement(s) with Marjam for the sale and delivery of the GenieMat RST products.

66.     As a proximate result of Pliteq's breaches of contract as aforesaid, MFLA and MNY have suffered substantial damages in excess of $457,040, the precise amount of which to be established during discovery and to be presented at trial.

**AS AND FOR AN EIGHTH CAUSE OF ACTION –
CIVIL CONSPIRACY AGAINST ALL DEFENDANTS**

67.     Marjam repeats and realleges paragraphs "1" through "32" of this Complaint as if here fully set forth.

68.     RB, Pliteq and Downey knowingly, purposely and actively conspired to cheat, defraud and injure Marjam, as hereinabove set forth.

69.     As a proximate result of RB's, Pliteq's and Downey's civil conspiracy as aforesaid, MFLA and MNY have suffered substantial damages in excess of $457,040, the precise amount of which to be established during discovery and to be presented at trial.

**WHEREFORE**, MFLA and MNY demand judgment as follows:

I.      On its First Cause of Action against RB, Pliteq and Downey, jointly and severally:

13

A.      For an award of actual damages, together with interest thereon;

B.      For an award of punitive damages in an amount to be determined by the Court;

C.      Pursuant to F.S.A. §501.213, preliminarily and permanently enjoining and restraining RB, Pliteq and Downey, and each and all of their respective shareholders, directors, officers, members, managers, representatives, employees and agents from, directly or indirectly, continuing to violate the FDTUPA by falsely and misleadingly describing the characteristics, thicknesses and qualities of the GenieMat RST line of products;

D.      Ordering and directing RB, Pliteq and Downey, jointly and severally, to indemnify Marjam, and any and all of its affiliates, shareholders, directors, officers, managers, members, employees and agents from and against any and all claims, causes of action, suits and obligations arising from or out of Marjam's sale of mis-labelled or defective GenieMat RST products, including reasonable attorney's fees, expert fees and litigation costs;

E.      Pursuant to F.S.A. §501.2015, for an award of reasonable attorney's fees and litigation costs of this action; and

F.      For such other and further relief and whether of a legal or equitable nature as the Court deems necessary and appropriate under the circumstances.

II.     On its Second Cause of Action against RB, Pliteq and Downey, jointly and severally:

A.      For an award of compensatory, consequential and incidental damages, together with interest thereon;

B.      Pursuant to 15 U.S.C. A. §1117(a), for an award of actual damages in an amount not exceeding three (3) times the amount of said damages.

C.      Preliminarily and permanently enjoining and restraining RB, Pliteq and Downey, and each and all of their respective shareholders, directors, officers, members, managers, representatives, employees and agents from, directly or indirectly, continuing to violate the Lanham Act by falsely and misleadingly describing the characteristics, thicknesses and qualities of the GenieMat RST line of products;

D.      Ordering and directing RB, Pliteq and Downey, jointly and severally, to indemnify Marjam, and any and all of its affiliates, shareholders, directors, officers, managers, members, employees and agents from and against any and all claims, causes of action, suits and obligations arising from or out of Marjam's sale of mis-labelled or defective GenieMat RST products, including reasonable attorney's fees, expert fees and litigation costs;

14

E.    Pursuant to 15 U.S.C. A. §1117(a), for an award of reasonable attorney's fees and the litigation costs of this litigation; and

F.    For such other and further relief and whether of a legal or equitable nature as the Court deems necessary and appropriate under the circumstances.

III.   On its Third, Fourth, Fifth and Seventh Causes of Action against Pliteq:

A.    For an award of compensatory, consequential and incidental damages, together with interest thereon;

B.    Preliminarily and permanently enjoining and restraining RB, Pliteq and Downey, and each and all of their respective shareholders, directors, officers, members, managers, representatives, employees and agents from, directly or indirectly, continuing to falsely and misleadingly describe the characteristics, thicknesses and qualities of the GenieMat RST line of products;

C.    Ordering and directing RB, Pliteq and Downey, jointly and severally, to indemnify Marjam, and any and all of its affiliates, shareholders, directors, officers, managers, members, employees and agents from and against any and all claims, causes of action, suits and obligations arising from or out of Marjam's sale of mis-labelled or defective GenieMat RST products, including reasonable attorney's fees, expert fees and litigation costs; and

D.    For such other and further relief and whether of a legal or equitable nature as the Court deems necessary and appropriate under the circumstances.

IV.   On its Sixth Cause of Action against Pliteq and Downey, jointly and severally:

A.    For an award of compensatory, consequential and incidental damages, together with interest thereon;

B.    For an award of punitive damages in an amount to be determined by the Court;

C.    Preliminarily and permanently enjoining and restraining RB, Pliteq and Downey, and each and all of their respective shareholders, directors, officers, members, managers, representatives, employees and agents from, directly or indirectly, continuing to falsely and misleadingly describe the characteristics, thicknesses and qualities of the GenieMat RST line of products; \

D.    Ordering and directing RB, Pliteq and Downey, jointly and severally, to indemnify Marjam, and any and all of its affiliates, shareholders, directors, officers, managers, members, employees and agents from and against any and all claims, causes of action, suits and obligations arising from or out of Marjam's

15

sale of mis-labelled or defective GenieMat RST products, including reasonable attorney's fees, expert fees and litigation costs; and

E.     For such other and further relief and whether of a legal or equitable nature as the Court deems necessary and appropriate under the circumstances; and

V.     On its Eighth Cause of Action against RB, Pliteq and Downey, jointly and severally:

A.     For an award of compensatory, consequential and incidental damages, together with interest thereon;

B.     For an award of punitive damages in an amount to be determined by the Court;

C.     Preliminarily and permanently enjoining and restraining RB, Pliteq and Downey, and each and all of their respective shareholders, directors, officers, members, managers, representatives, employees and agents from, directly or indirectly, continuing to falsely and misleadingly describe the characteristics, thicknesses and qualities of the GenieMat RST line of products;

D.     Ordering and directing RB, Pliteq and Downey, jointly and severally, to indemnify Marjam, and any and all of its affiliates, shareholders, directors, officers, managers, members, employees and agents from and against any and all claims, causes of action, suits and obligations arising from or out of Marjam's sale of mis-labelled or defective GenieMat RST products, including reasonable attorney's fees, expert fees and litigation costs;

E.     For such other and further relief and whether of a legal or equitable nature as the Court deems necessary and appropriate under the circumstances.

Dated: November 23, 2015

Respectfully Submitted,
BOYES, FARINA & MATWICZYK
Counsel for Plaintiffs,

By: _____
     John Farina, Esq.
     3300 PGA Blvd., Suite 600
     Palm Beach Gardens, FL 33410
     Tel. no. 561-202-1578
     Fax no. 561-694-7980
     Florida Bar No: 612146
     jfarina@bfmlaw.com

16

**Of Counsel:**
**Alan M. Lebensfeld, Esq.**
**Lebensfeld Sharon & Schwartz P.C.**
**140 Broad Street**
**Red Bank, New Jersey 07701**
**Telephone no. 732-530-4600**
**Fax no.  732-530-4601**
**Alan.lebensfeld @lsandspc.com**

# Exhibit A



# GENIEMAT™

### GenieMat™ RST Underlayment for Reduced Sound Transmission.

**It's not magic, it's engineering.**™

# GenieMat™ RST
## Sound Control Underlayment

### From the inventor of the patented technology (US Patent RE:41,945) for recycled rubber used for impact sound insulation, directly below floor coverings

**GenieMat™ RST** is a flat, resilient, reduced sound transmission mat made from 94% recycled rubber content, used directly under hard surface floor finishes and over concrete and wood construction.

It is used when superior sound control is required in multi-family housing, high-rises, or commercial buildings and protects ceramic tile, porcelain and stone from substrate cracks.

Engineered for direct adhered floor coverings such as tile, stone, wood, and vinyl floor coverings.



**Tile** – All products rated for minimum of Commercial use.

**Wood** – GenieMat FAS adhesives offer superior bonding strength.

**Vinyl** – One-step method provides superior sound control for resilient floor coverings.

**Complete floor covering system warranty available.**

**ANSI** standard 118.12

**IAQ** test (ASTM D5116)

**LEED** accreditation: up to 10 points

## Product Specifications

| Product | Thickness | Roll Size | Average Dynamic Stiffness (BS EN 29052) | Type A Hardness (ASTM D2240) | TCNA Robinson Test with tile (ASTM C627) |
|---------|-----------|-----------|------------------------------------------|-------------------------------|-------------------------------------------|
| RST02 | 2mm | 4' x 75' | 157 MN/m³ | 40 durometer | Heavy commercial |
| RST05 | 5mm | 4' x 30' | 105 MN/m³ | 40 durometer | Moderate commercial |
| RST10 | 10mm | 4' x 15' | 64 MN/m³ | 40 durometer | Light commercial |
| RST12 | 12mm | 4' x 15' | 60 MN/m³ | 40 durometer | Light commercial |
| RST15 | 15mm | 4' x 15' | 54 MN/m³ | 50 durometer | Light commercial |



# Rubber is the BEST vibration isolation material

Compression Set:  4%
Loss Factor for Damping:  20%

**Positive adhesive lock** – for very high bond strengths with adhered floor coverings.



## Tile Floor



Steel Stud Typical
Gypsum Board
Baseboard
GenieClip™ ACS
Acoustical Sealant (as required)
GenieMat™ PMI Perimeter Isolation Strip
1/4" gap

Tile Floor
Thinset Mortar (ANSI 118.4)
GenieMat™ RST05 (5mm)
GenieMat™ FAS Adhesive or Thinset Mortar (ANSI 118.4)
Concrete Slab

## Vinyl Sheet, Plank, Tile Floor



Wood Stud Typical
Gypsum Board
Baseboard
GenieClip™ ACS
Acoustical Sealant (as required)
GenieMat™ PMI Perimeter Isolation Strip
1/4" gap

* Contact Pliteq Engineering Dept.
  for alternative installation methods

Vinyl Sheet, Plank, Tile Floor
GenieMat™ FAS Adhesive
GenieMat™ RST05 (5mm)
GenieMat™ FAS Adhesive
Subfloor
Floor Joist Typical

## ASTM E2179 – Standard Test Method for Laboratory Measurement of the Effectiveness of Floor Coverings in Reducing Impact Sound Transmission Through Concrete Floors
### (6" concrete slab with tile)

**Product** All listed thicknesses are nominal in imperial measure        ΔIIC (dB)



GenieMat™ RST12 1/2"  — 23 dB
GenieMat™ RST10 3/8"  — 21 dB
GenieMat™ RST05 1/4"  — 19 dB
WE Cork 1/2"  — 18 dB
GenieMat™ RST02 1/8"  — 16 dB
WE Cork 1/4"  — 14 dB
EasyMat™ 1/2"  — 14 dB
Whisper Mat® CS 1/8"  — 12 dB
EasyMat™ 1/4"  — 11 dB
Proflex™ 90MSC 1/8"  — 10 dB
NobleSeal® SIS 1/16"  — 9 dB
Protecto-Wrap® 1/8"  — 9 dB
Mapelastic™ SM 1/16"  — 6 dB
Super SAM 1/16"  — 4 dB

0 dB        5 dB        10 dB        15 dB        20 dB        25 dB

## Acoustical Testing Standards – Concrete Structure

| GenieMat Product | Finish Floor | Concrete Slab Thickness | IIC Rating (ASTM E492) | STC Rating (ASTM E90) | Delta IIC (ASTM E2179) |
|---|---|---|---|---|---|
| RST05 | Sheet Vinyl | 6" | 53 | 53 | 23 |
| RST05 | Vinyl Plank | 6" | 50 | 53 | 22 |
| RST10 | Vinyl Plank | 6" | 51 | 53 | 23 |
| RST10 | Ceramic Tile | 6" | 50 | 52 | 21 |
| RST12 | Ceramic Tile | 6" | 53 | 52 | 23 |
| RST02 | Wood | 8" | 54 | 58 | n/a |
| RST05 | Wood | 8" | 56 | 58 | n/a |
| RST10 | Wood | 8" | 56 | 58 | n/a |
| RST02 | Vinyl Plank | 8" | 52 | 58 | n/a |
| RST05 | Vinyl Plank | 8" | 55 | 58 | n/a |
| RST10 | Vinyl Plank | 8" | 56 | 58 | n/a |
| RST05 | Ceramic Tile | 8" | 50 | 55 | n/a |
| RST10 | Ceramic Tile | 8" | 53 | 55 | n/a |

## Acoustical Testing Standards – Wood Structure

| GenieMat Product | Finish Floor | Wood Joist | UL Subfloor | Ceiling Type | IIC (E492) | STC (E90) |
|---|---|---|---|---|---|---|
| RST02 | Tile | Truss | ¾" Gypsum Concrete | GenieClip | 55 | 55 |
| RST02 | Tile | Truss | Plywood | GenieClip | 55 | 53 |
| RST02 | Wood | Truss | Plywood | GenieClip | 52 | 53 |
| RST02 | Tile | TJI | Plywood | GenieClip | 57 | 54 |
| RST02 | Vinyl | TJI | Plywood | GenieClip | 53 | 54 |
| RST02 | Wood | TJI | Plywood | GenieClip | 56 | 54 |
| RST02 | Vinyl | TJI | ¾" Gypsum Concrete | GenieClip | 52 | 54 |
| RST02 | Tile | TJI | ¾" Gypsum Concrete | Resilient Channel | 46 | 54 |
| RST02 | Tile | TJI | ¾" Gypsum Concrete | GenieClip | 53 | 54 |
| RST05 | Wood | TJI | Plywood | GenieClip | 50 (AIIC per ASTM E1007) | n/a |
| RST10 | Laminate | Truss | ¾" Gypsum concrete | Resilient Channel | 49 (FIIC per ASTM E1007) | n/a |

GenieMat™ is a trademark of Pliteq Inc.
The information provided is accurate to the best of our knowledge at the time of printing.
However, we reserve the right to make changes when necessary without notification.




09/13

# Exhibit B



About Us    Outstanding Features    Literature    Nev

PRODUCTS        APPLICATIONS        CUST
                                            OU

PRODUCTS        APPLICATIONS        CUSTOMIZATION        ABOUT US
LITERATURE        NEWS

CONTACT

Home » Applications » Acoustic

## ACOUSTICAL UNDERLAYMENT

Underlayment made from recycled rubber offers sound absorption characteristics that are unmatche
any other material.

The sound deadening characteristics of recycled rubber are unrivaled and widely recognized, and Ultimate RB is proud to offer a complete spec
recycled rubber acoustical underlayment. Available in thicknesses from 2mm to 12mm for both residential and commercial applications, Ultima
a sound solution for your requirements. This underlayment is also widely used as a base mat for Pad & Pour urethane systems in schools and o
centers.

### Silent Tread Commercial Underlayment



Ultimate Applications:

### SILENT TREAD COMMERCIAL UNDERLAYMENT

For very demanding commercial applications, Ultimate RB manufactur
of underlayments in thicknesses up to 14mm.

These products are used in high-rise
condominiums, hotels, office buildings, and other
commercial structures that must meet the Building
Code requirements for sound transmission from
floor to floor.

Silent Tread Commercial Underlayments are
compatible with a variety of flooring materials
including hardwood, engineered wood and tile.
They are also compatible with a wide variety of
sub-floor configurations.

Being made from recycled tires, Silent-Tread
Commercial Underlayments qualify for Executive
Order 13101, and their use can contribute toward
LEED Green Building Council Certification.

ULTIMATE BENEF
· ECO-FRIENDL
· DURABLE
· EASY INSTALL
· EASY TO CLE,
· AMERICAN M
· CUSTOM COI
· AND MORE >

TYPICAL PRO
INSTALLATIO
MAINTENAN(
INSTRUCTION
WARRANTY

Expert advice is available to help our clients choose the correct underlay
their particular needs. This service can include on-site consultations with

contractors and acoustical engineers. We can also provide on-site acous
to verify the performance of our product in any building.

Millions of square feet of our acoustical underlayment have been succes
installed in many of the most upscale condominiums, hotels/resorts and
buildings in the United States.

## Silent Tread Residential Underlayment



Ultimate Applications:

## SILENT TREAD RESIDENTIAL UNDERLAYMENT

Ultimate RB produces a 2mm acoustical underlayment for use in residential applications involving laminate, hardwood and engineered wood flooring.

Outstanding features of this product include:

- **Superior Noise Reduction**: Ultimate RB Silent-Tread outperformed the competition in head-to-head field testing for noise reduction. It has three times the sound dampening weight of competing products.

- **Moisture/Vapor Protection**: This product is available with or without a vapor barrier. The version with the vapor barrier, Silent-Tread XL, has a laminated polypropylene film that prevents flooring damage due to vapor transmission through a con floor.

- **Crush-Proof**: Silent-Tread's durable rubber material will not be crus degraded by the flooring system. It will retain its noise reduction ca the life of the floor.

- **Environmentally Responsible**: Being made from recycled tires, Ult Silent-Tread qualifies for Executive Order 13101, and it can help tow Green Building Council certification.

- **Mold/Mildew Prevention**: Silent-Tread incorporates an anti-microt ingredient to help prevent the growth of harmful mold, mildew and accordance with nationally recognized standards.

- **Ease of Installation**: Superior density allows the product to lay flat installation process.

- **Warranty**: Ultimate RB Silent-Tread Residential Underlayments are our industry-leading 20 Year Limited Warranty.

ULTIMATE BENEF
- ECO-FRIENDL
- DURABLE
- EASY INSTALL
- EASY TO CLE,
- AMERICAN M
- CUSTOM COI
- AND MORE >

TYPICAL PRO
INSTALLATIO
MAINTENAN(
INSTRUCTIO
WARRANTY

## Pad & Pour Base Mat



## PAD & POUR BASE MAT

Ultimate RB's acoustical underlayment is also widely used as a base m & Pour urethane flooring systems.

This type of flooring is commonly used in all-purpose gym facilities for schools and community centers. Through our affiliation with urethane producer, MarChem, Ultimate RB is uniquely positioned to provide a combination of base mat and urethane coatings that no other manufacturer can match.

ULTIMATE BENEF
- ECO-FRIENDL
- DURABLE
- EASY INSTALL
- EASY TO CLE,
- AMERICAN M
- CUSTOM COI
- AND MORE >

TYPICAL PRO
INSTALLATIO
MAINTENAN(
INSTRUCTIO