## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 15-24363-CIV-WILLIAMS

MARJAM SUPPLY COMPANY OF FLORIDA,
LLC, and MARJAM SUPPLY COMPANY,

      Plaintiffs

vs.

PLITEQ, INC., ULTIMATE RB, INC.,
and PAUL DOWNEY,

      Defendants.
_____/

### ORDER

**THIS MATTER** is before the Court on Defendant Ultimate RB, Inc.'s ("URB")

amended motion to dismiss for lack of personal jurisdiction (DE 34; Response DE 47;

Reply DE 51); URB's motion to strike portions of James Metcalf's Affidavit submitted in

opposition to motion to dismiss for lack of personal jurisdiction (DE 52; Response DE

53); and URB's motion dismiss for failure to state a claim (DE 12; Response DE 42;

Reply DE 50).  For the reasons below, the Court grants URB's motion to dismiss for

lack of personal jurisdiction and denies as moot URB's motions to strike and to dismiss

for failure to state a claim.

## I.      BACKGROUND

This case is about the quality of rubber acoustical underlayment products,

specifically "flat rubber, resilient, reduced sound transmission mat[s] which [are] utilized

directly beneath hard surface floor finishes and over concrete and wood construction, in

order to provide sound attenuation control in multi-family housing, high-rise and

commercial buildings." (DE 1 ¶ 12). Plaintiffs Marjam Supply Company of Florida and Marjam Supply Company (collectively, "Marjam") are affiliated Florida and New York corporations that supply and distribute building materials. (DE 1 ¶¶ 5-6). Defendant Pliteq, Inc. ("Pliteq") is a Canadian corporation that supplies rubber acoustical underlayment products under its own label.[1] (DE 1 ¶¶ 7-8). Pliteq sources these products from URB, a rubber recycler and manufacturer which Marjam alleges is incorporated and has its principal place of business in Oregon (DE 1 at 1-2), but which URB asserts is incorporated in Delaware with its principal place of business in Missouri (DE 47 at 6).

From 2013 to 2015, Marjam purchased $1.6 million worth of Pliteq's "GenieMat RST" brand rubber mats, primarily to supply partners involved in the construction of high-rise apartment and condominium projects in South Florida. (DE 1 ¶¶ 17, 18). One such transaction—Marjam's July 2015 purchase of 256,000 square feet of Pliteq's GenieMat RST12 product—gave rise to the issues presented in this case. (DE 1 ¶ 18). After this purchase, Marjam sold all 256,000 square feet of the product to a subcontractor working on a high-rise residential condominium project in Miami known as the "Met 3 Project." (DE 1 ¶ 18). The real estate developer spearheading the Met 3 Project, ZOM Living ("ZOM"), intended to use the GenieMat RST12 mats to provide sound insulation for the occupants of each of the building's condominium units. In fact, Marjam specifically ordered the GenieMat RST12 model from Pliteq because ZOM's acoustical engineers had specified that they wanted sound attenuation products of a certain thickness and "sound transmission coefficient" or "STC." (DE 1 ¶¶ 19-20). However, after Marjam delivered the GenieMat RST12 mats, ZOM's acoustical

---

[1]  Pliteq's President and Chief Executive Officer is Defendant Paul Downey. (DE 1 ¶ 9).

engineers tested them and found that their STCs were lower than what Pliteq had represented, meaning that the sound attenuation capability of the mats was below the level ZOM required. (DE 1 ¶ 21). Accordingly, ZOM canceled the order, returned the GenieMat RST12 mats to Marjam, and turned to Marjam's competitor to purchase a different brand of mats that met ZOM's needs. (DE 1 ¶ 22).

Subsequently, Marjam independently tested a broad range of Pliteq's GenieMat RST products and found that they regularly fell below the thicknesses and STCs that Pliteq represented publicly and published on its website. (DE 1 ¶ 24-26). Marjam also contends that Pliteq failed to disclose that the STCs it advertised were based on tests conducted "without adherence to an under floor with glue, the approved and standard method of utilization of the products, thereby resulting in an overstatement of their sound attenuation qualities." (DE 1 ¶ 30). Marjam therefore claims that it cannot "responsibly resell" the mats from its July 2015 order and that the failed transaction has cost it significant lost profits and actual damages. (DE 1 ¶ 23). Finally, Marjam alleges that URB knew about and complied with Pliteq's unlawful request to mislabel the mats and knew about the misleading tests Pliteq conducted to produce inflated sound transmission coefficients. (DE 1 ¶ 27, 28-30).

On November 24, 2015, Marjam brought three causes of action against URB: Count 1 alleges that URB violated Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.24; Count 2 alleges that URB violated the Lanham Act's prohibition on false and misleading advertising, 15 U.S.C. § 1125(a)(1); and Count 8 alleges that URB was part of a civil conspiracy to defraud Marjam. URB moved to

dismiss these three claims because the Court lacks personal jurisdiction over URB and because Marjam has failed to state a claim against URB.

## II.   LEGAL STANDARD

On a motion to dismiss for lack of personal jurisdiction, the Court accepts as true all allegations in the complaint to determine whether the plaintiff has met his burden of establishing a *prima facie* case of personal jurisdiction.  *See Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).  "A *prima facie* case is established if the plaintiff puts forth enough evidence to withstand a motion for a directed verdict."  *Id.* (quotation marks and citation omitted).

The Court engages in a two-part analysis to determine if it may exercise jurisdiction over a non-resident defendant.  *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (citing *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004)); *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 626 (11th Cir. 2010) (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)); *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990) (citations omitted).  First, the Court determines whether the defendant's activities satisfy Florida's long-arm statute.  *See Mosseri*, 736 F.3d at 1350. Second, the Court determines whether the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment.  *Id.* at 1350-51.

## III.   DISCUSSION

URB argues that Marjam's Complaint fails to plead any basis for personal jurisdiction pursuant to Florida's long-arm statute, Fla. Stat. § 48.193, or the Due

Process Clause of the Fourteenth Amendment.  The Court agrees and dismisses Marjam's claims against URB without prejudice.[2]

Marjam bears the initial burden of establishing a *prima facie* case of personal jurisdiction.  *See Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006) (citing *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1268-69 (11th Cir. 2002)).  To do so, Marjam must plead facts sufficient to withstand a directed verdict that URB is within the reach of Florida's long-arm statute, Fla Stat. § 48.193, in one of two ways.  *Id.*  First, Florida courts can exercise general personal jurisdiction over any claims against a defendant—whether or not they involve the defendant's activities in Florida—if the defendant engages in "substantial and not isolated activity" in Florida.  *Schulman v. Inst. for Shipboard Educ.*, 624 F. App'x 1002, 1005 (11th Cir. 2015).  Second, Florida courts can also exercise specific personal jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida if those contacts fall within one of nine statutorily enumerated categories set forth in Fla. Stat. § 48.193(1)(a).  *Id.*

To avoid offending URB's right to constitutional due process, Marjam must also plead facts that URB's "contact with the state is such that [it] has 'fair warning' that [it] may be subject to suit there."  *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008) (citation omitted).  "This fair warning requirement is satisfied if the defendant has

---

[2]  Because "jurisdictional questions generally should be decided before reaching the merits," the Court first considers URB's motion to dismiss for lack of personal jurisdiction.  *Courboin v. Scott*, 596 F. App'x 729, 735 (11th Cir. 2014) (citing *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997); *Madara v. Hall*, 916 F.2d 1510, 1514, 1514 n.1 (11th Cir. 1990)).  The Court dismisses Marjam's claims against URB because the Complaint pleads no facts supporting the exercise of personal jurisdiction, and so denies both the motion to strike and motion to dismiss for failure to state a claim as moot.

purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* (quotation marks and citations omitted).  A court also "may assert general jurisdiction over foreign (sister-state or foreign-country) corporations, without offending due process when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (quotation marks and citation omitted).  The "at home" threshold is met by "[o]nly a limited set of affiliations with a forum," such as a corporation's place of incorporation, principal place of business, or in "exceptional cases," substantial activities in the forum.  *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. ---, 134 S.Ct. 746, 760 (2014)).

The Complaint contains no facts that establish a *prima facie* case of personal jurisdiction over URB under either Florida's long-arm statute or the Due Process Clause of the Fourteenth Amendment.  Indeed, the Complaint alleges no direct link between URB and Florida at all and instead recites a list of facts that are irrelevant to a personal jurisdiction analysis.[3]  Marjam responds that despite not alleging any facts linking URB directly to Florida, the Complaint still establishes personal jurisdiction in two main ways.[4]

---

[3] Specifically, the Complaint alleges that URB is an Oregon corporation (DE 1 at 1-2); that URB manufactures rubber sound isolation products for Pliteq "to which Pliteq affixes its private label" (DE 1 ¶ 7); that URB is a "rubber recycler and manufacturer of recycled rubber acoustical underlayment for both residential and commercial applications" (DE 1 ¶ 10) that it sells in "thicknesses from 2mm to 12mm" (DE 1 ¶ 14); that from 2013 to 2015, Marjam acted as a distributor and supplier of products "manufactured by [U]RB for Pliteq" (DE 1 ¶ 11); that Marjam cannot resell 256,000 square feet of GenieMat RST12 product it bought from Pliteq in July 2015 and now holds these products after the failed Met 3 Project transaction in part because of "[U]RB's mis-description and misrepresentation" (DE 1 ¶ 23); that Pliteq gave "instructions to [U]RB to mislabel the products as to thickness, an unlawful request with which [URB] knowingly complied and implemented" (DE 1 ¶ 27) specifically with regard

First, Marjam argues that URB's "knowing and active conduct in mislabeling and mis-describing the GenieMat RST products . . . has resulted in claims for violations of FDUTPA and Lanham Act [sic] . . . all tortious conduct which in this case caused injury to Marjam in Florida, regardless of the fact that [U]RB's conduct in mislabeling and mis-describing the product took place outside Florida." (DE 47 at 9). This argument premises jurisdiction entirely on the Complaint's conclusory statement that Pliteq instructed URB—outside of Florida—to "mislabel the products as to thickness, an unlawful request with which [URB] knowingly complied and implemented." (DE 1 ¶ 27). However, the only facts the Complaint includes in support of this statement are that Pliteq specifically instructed URB to mislabel two products—the GenieMat RST02 and RST06 (DE 1 ¶¶ 28-29)—that are not the GenieMat RST12 products involved in the transaction that precipitated this suit. Thus, unlike the plaintiffs in the two cases Marjam cites, Marjam alleges no connection between URB and Florida aside from the factually

to Pliteq's GenieMat RST02 and GenieMat RST06 products (DE 1 ¶¶ 28-29); and that URB knows Pliteq's GenieMat RST line of products "produce significantly less sound attenuation" than advertised (DE 1 ¶ 30).

[4] Marjam makes two other arguments for personal jurisdiction. First, it contends that URB "holds itself out as being one of the largest recycle rubber manufacturers in the world, [and] actively advertises, markets and sells its branded acoustical underlayment flooring products throughout the state of Florida," subjecting URB to general jurisdiction under Florida's long-arm statute and the Due Process Clause of the Fourteenth Amendment. (DE 47 at 11-12). The Court disregards this argument because Marjam raises these allegations for the first time in its briefing rather than in the Complaint. Second, Marjam cites Fla. Stat. § 48.193(1)(a)(6), which provides for jurisdiction over a cause of action against a foreign defendant who "processed, serviced or manufactured" products "used or consumed within" Florida that caused "injury to persons or property." However, this provision "'contemplate[s] personal injury or physical property damage' within the State of Florida and does not apply to claims alleging only economic damages" as in this case. *Reflection Mfg., LLC v. I.S.A. Corp.*, No. 6:10-CV-1951-ORL, 2011 WL 972570, at *9 (M.D. Fla. Mar. 18, 2011) (interpreting Fla Stat. § 48.193(1)(a)(6), formerly § 48.193(1)(f)(1)-(2)) (quoting *Aetna Life & Cas. Co. v. Therm–O–Disc, Inc.*, 511 So.2d 992, 994 (Fla. 1987)).

unsupported statement that it was injured in Florida by URB's out-of-state "mis-description and misrepresentation" (DE 1 ¶ 23) of mats that Pliteq sells and that Marjam does not specifically claim to have bought.  *See Koch v. Royal Wine Merchants, Ltd.*, 847 F. Supp. 2d 1370, 1381 (S.D. Fla. 2012) (granting motion to dismiss FDUTPA claim where plaintiff "failed to plead sufficient facts to establish that Defendants committed a tort in Florida"); *see also SPM Thermo-Shield, Inc. v. SICC, GmbH*, No. 2:15-cv-439-FtM-29CM, 2015 WL 7076692 (M.D. Fla. Nov. 13, 2015) (denying motion to dismiss Lanham Act claim for lack of personal jurisdiction where the defendant corporation allegedly misappropriated the plaintiff Florida corporation's marketing materials and posted them on a website accessible in Florida).

Second, Marjam contends that the Complaint successfully alleges personal jurisdiction because URB is the member of a conspiracy and the Court should therefore impute to URB the Florida acts of its co-conspirator Pliteq.  (DE 47 at 9).  This argument relies on two Florida cases: *Execu–Tech Business Systems v. New Oji Paper Company*, 752 So.2d 582 (Fla. 2000) and *Wilcox v. Stout,* 637 So.2d 335 (Fla. 2d Dist. Ct. App. 1994).  In *Execu-Tech*, the plaintiff filed suit in Florida state court against a Japanese corporation that claimed to have no contacts with Florida.  752 So.2d at 583.  The *Execu-Tech* complaint alleged that the Japanese corporation had pled guilty to federal criminal charges that it participated in a price-fixing conspiracy with other thermal fax paper manufacturers.  *Id.* at 585.  In light of this critical fact, the Florida Supreme Court held that there was a "nexus between [the Japanese corporation] and the retail price paid in Florida for price-fixed thermal fax paper" such that the Florida

court could exercise personal jurisdiction. *Id.* at 586.  In reaching this decision, the

*Execu-Tech* court relied on *Wilcox*, in which a Florida intermediate appellate court held:

> Where a civil conspiracy to commit tortious acts has been successfully alleged,
> and some of those acts are alleged to have been accomplished within the state
> of Florida, we have no hesitancy in applying the well-accepted rules applicable to
> the liability of co-conspirators in the criminal context. Those rules make every act
> and declaration of each member of the conspiracy the act and declaration of
> them all. Additionally, each conspirator is liable for and bound by the act and
> declaration of each and all of the conspirators done or made in furtherance of the
> conspiracy even if not present at the time.

637 So.2d at 337.  Relying on this statement of law, the *Wilcox* court reversed a trial

court that had acknowledged the plaintiff "successfully alleged a conspiracy" touching

Florida, but nonetheless dismissed the plaintiff's claims against two co-conspirator

defendants who were otherwise unconnected to Florida. *Id.* at 336.  Pursuant to the

decisions in *Execu-Tech* and *Wilcox*, Florida courts can exercise personal jurisdiction

over a defendant with no other connection to the state where participation in a civil

conspiracy touching the state has been successfully alleged.  Significantly, both the

*Execu-Tech* and *Wilcox* plaintiffs advanced allegations demonstrating a civil conspiracy,

which is a prerequisite to the imputation of the acts of co-conspirators for jurisdictional

purposes. *See Execu-Tech*, 752 So.2d at 586; *Wilcox*, 637 So.2d at 336.

Accordingly, in *Platypus Wear, Inc. v. Clarke Modet & Co.*, 515 F. Supp. 2d 1288,

1293 (S.D. Fla. 2007), another court of this District granted an individual defendant's

motion to dismiss for lack of personal jurisdiction where the plaintiff had not successfully

alleged a civil conspiracy.  In arguing for the denial of the individual defendant's motion,

the *Platypus* plaintiff cited *Execu-Tech* and *Wilcox* and sought to impute the Florida acts

of a corporate co-defendant and alleged co-conspirator to the individual defendant. *Id.*

at 1292-94.  However, the court granted the individual defendant's motion after finding

that circumstantial indications of a conspiracy—including references to specific emails and meetings—did not support his involvement in a conspiracy with the corporate co-defendant. *Id.* at 1295-96.

In this case, there are no facts supporting URB's involvement in a conspiracy with Pliteq.  To allege a civil conspiracy, Marjam must cite facts allowing for the reasonable inference that "an agreement existed between [URB and Pliteq] to do an unlawful act (or a lawful act by unlawful means), that some overt act was done in furtherance of the conspiracy, and that [Marjam] was harmed as a result." *See Carles Const., Inc. v. Travelers Cas. & Sur. Co. of Am.*, 56 F. Supp. 3d 1259, 1281 (S.D. Fla. 2014) (citing *Russo v. Fink*, 87 So.3d 815, 819 (Fla. 4th Dist. Ct. App. 2012).  But, as discussed above, the Complaint offers only the conclusory statement that Pliteq gave "specific instructions to [U]RB to mislabel the products as to thickness, an unlawful request with which [URB] knowingly complied and implemented" (DE 1 ¶ 27) without any reference to what the statements were, who made them, or when they were made. Moreover, the few facts in the Complaint supporting Pliteq's alleged instructions to URB have nothing to do with the GenieMat RST12 product involved in the transaction that gave rise to this suit.  (*See* DE 1 ¶¶ 28-29).

Thus, because Marjam offers only conclusions and no facts to support the civil conspiracy claim against URB, the Court cannot impute Pliteq's Florida acts to URB to find that the Complaint establishes a *prima facie* case of personal jurisdiction.  *See Platypus*, 515 F. Supp. 2d at 1296; *Hudson Glob. Res. Mgmt., Inc. v. Beck*, No. 805CV1446T27TBM, 2006 WL 1722352, at *3 (M.D. Fla. June 20, 2006) (dismissing case where "Plaintiff has not sufficiently alleged a *prima facie* case of jurisdiction"); *Bell*

10

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)  (plaintiff's complaint need not provide "detailed factual allegations," but must provide "more than labels and conclusions").

## IV.   CONCLUSION

For the reasons above, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant URB's amended motion to dismiss for lack of personal jurisdiction (DE 34) is **GRANTED**.  Plaintiffs' claims against URB are **DISMISSED WITHOUT PREJUDICE** and Marjam may attempt to re-plead allegations sufficient to establish personal jurisdiction over URB.

2. Defendant URB's motion to strike portions of James Metcalf's Affidavit submitted in opposition to motion to dismiss for lack of personal jurisdiction (DE 52) is **DENIED AS MOOT**.

3. Defendant URB's motion to dismiss for failure to state a claim (DE 12) is **DENIED AS MOOT**.

4. Plaintiffs shall file any amended complaint within **14 days** of the date of this Order.

**DONE AND ORDERED** in chambers in Miami, Florida, this /3 day of September, 2016.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE