UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-CIV-24363-WILLIAMS/SIMONTON


MARJAM SUPPLY COMPANY OF FLORIDA,
LLC and MARJAM SUPPLY COMPANY,

       Plaintiffs,

   v.

PLITEQ, INC. and
PAUL DOWNEY,

       Defendants,

PLITEQ, INC. and
PAUL DOWNEY,

       Counter-Plaintiffs,

   v.

MARJAM SUPPLY COMPANY OF FLORIDA,
LLC; MARJAM SUPPLY COMPANY; and
JIM METCALF,

       Counter-Defendants.

_____/

ORDER GRANTING PLITEQ, INC., AND PAUL DOWNEY'S
MOTION TO COMPEL ECORE INTERNATIONAL, INC.'s
COMPLIANCE WITH SUBPOENA TO PRODUCE DOCUMENTS

     This matter is before the Court upon Defendants Pliteq, Inc., and Paul Downey's

Motion to Compel Ecore International, Inc.'s Compliance with Subpoena to Produce

Documents, ECF No. [109-2]. Non-Party Ecore has filed an Opposition to the Motion, ECF

No. [109-3], and Defendants have filed a Reply, ECF No. [109-4].[1] The Honorable Kathleen

---

[1] The Motion to Compel, and the Opposition and Reply thereto were filed as attachments
to Defendants' Notice of Filing Order of Transfer, Fully Briefed Motion to Compel as to
Ecore Subpoena, and Request for Adjudication Under Seal, ECF No. [109]. An unsealed
redacted version of those documents was also filed with the Court, ECF No. [106].
Hence, the references to ECF No. [109] directly correspond to the entries found at ECF

M. Williams, United States District Judge, has referred discovery matters to the undersigned Magistrate Judge, ECF No. [63].  The Parties have also filed a Stipulation Regarding Deposition After Discovery Date, ECF No. [146], wherein they agree that the deposition of non-party Ecore International, Inc., may occur after the close of discovery on December 20, 2017.

I. <u>MOTION TO COMPEL</u>

Defendants have filed the instant Motion seeking to compel Ecore International, Inc., ("Ecore") to comply with a subpoena to produce the following documents: 1) nine (9) documents previously produced in a civil action pending between Pliteq and Ecore in a Pennsylvania-based action; and, 2) relevant responsive documents in limited categories that post-date Ecore's final production in that Pennsylvania action, ("Pennsylvania Litigation"), ECF No. [109-2]. Defendants contend that the documents sought are highly relevant to Defendant Pliteq's Counterclaims in this action. In support of this contention, Defendants explain that Pliteq's breach of contract counterclaim stems from a distribution agreement between Pliteq and Marjam whereby Pliteq gave Marjam the right to buy Pliteq product at a significantly reduced price in exchange for Marjam's service as Pliteq's distributor in a region of Florida, and Marjam's promise not to sell products that compete with Pliteq's products, ECF No. [109-2] at 3.  The Defendants contend that the agreement specifically prohibited Marjam from selling or promoting competitive products such as Ecore QT, and, further contend that shortly after entering in the agreement, Marjam breached that agreement by selling the Ecore QT product. ECF No. [109-2] at 3. The Defendants also allege that Ecore's president and

---

No. [106].  In addition, the Motion to Compel at bar is the same Motion at issue in Case No. 17-mc-23347-KMW.  This Order is intended to resolve the Motion in this action, and the entirety of the miscellaneous action.

CEO, Art Dodge, had direct communications with Marjam related to Marjam's action against Pliteq.

Defendants contend that production of the nine requested documents from the Pennsylvania Litigation will place no burden on Ecore because the documents were previously produced and have already been Bates stamped, ECF No. [109-2] at 6. Further, the Defendants contend that Marjam has not produced the documents in this action, and state that Marjam asserts that those documents have been destroyed or lost, ECF No. [109-2] at 7. As to the Defendants' request that Ecore search for additional relevant responsive documents in limited categories that post-date Ecore's final production in the Pennsylvania Litigation, the Defendants contend that those documents are relevant because Marjam (through its product manager, Jim Metcalf), has engaged in a series of actions intended to interfere with Pliteq's business after the Pliteq-Marjam contract was terminated on July 10, 2015, ECF No. [109-2] at 8. The Defendants state that they only request that Ecore search for documents in limited categories during a time period of about a year.[2]

---

[2] The Original Subpoena issued to Ecore sought production of the following documents:

1.      All documents and things that relate to or refer to the sale of Ecore products to Marjam from April 2014 to the present;

2.      All communications between Marjam and Ecore that relate to or refer to agreement or potential agreements for Marjam to buy, sell, or promote Ecore products;

3.      All documents and things that relate or refer to agreements between Pliteq and Marjam;

4.      All communications between Ecore and Marjam that relate or refer to Pliteq, Downey, or Pliteq products.

ECF No. [109-2] at 4.

In support of their Motion, the Defendants have submitted the Declaration of Jennifer Theis, Counsel for the Defendants, ECF No. [109-1]. In that Declaration, Ms. Theis states that documents produced by Marjam reveal that Ecore's president and CEO, Art Dodge, had direct communications with Marjam related to Marjam's action against Pliteq, ECF No. [109-1] at 1. She also states that on March 29, 2017, Ecore responded to Pliteq's subpoena with various objections and a request that Pliteq identify which documents from the Pennsylvania Litigation that it sought to use in the Florida Litigation. The Declaration further states that on May 2, 2017, Pliteq agreed to limit the subpoena to eleven documents produced in the Pennsylvania Litigation and any additional communications between Art Dodge and Jim Metcalf relating to the four categories listed in the subpoena.[3] Attached to the Declaration are the referenced communications between Counsel for Ecore and Defendants related to the subpoena at issue, as well as the nine documents from the Pennsylvania Litigation that are at issue in the Motion to Compel. Those documents were filed under seal. See ECF No. [109-2] (sealed).

In response, Ecore, a non-party in this action, contends that the Defendants' subpoena improperly seeks the production of documents that are protected by the protective order issued on April 4, 2016 in the Eastern District of Pennsylvania action (Pennsylvania Litigation) of *Ecore International, Inc. v. CSR Industries et al.*, Civ. A. No. 11-cv-6843, ECF No. [109-3] at 1.[4] Ecore further argues that the Defendants have violated

---

[3] The May 2, 2017, letter from Counsel for the Defendants to Counsel for Ecore actually states that Defendants are willing to limit the subpoena at issue to eleven specific documents that had already been produced and Bates stamped by Ecore in the Pennsylvania Litigation, and to any additional communication between Arthur Dodge, III and Jim Metcalf *since Ecore's document production date in the Pennsylvania case (April 12, 2016)*, ECF No. [109-1] at 23 (emphasis added).

[4] In the Pennsylvania Litigation, Ecore filed suit against Paul Downey, CSR Industries, Inc., and Pliteq, Inc. In that action, Ecore asserted claims under the Lanham Act, as well

their duty under Federal Rule of Civil Procedure 45 to take reasonable steps to avoid causing undue burden and expense on Ecore in responding to the subpoena, ECF No. [109-3] at 1.  Specifically, Ecore asserts that Pliteq had the opportunity to request documents from Ecore relating to the Florida Litigation at the same time Ecore was performing electronic searches and gathering documents for the Pennsylvania Litigation. Ecore argues that had Pliteq promptly sought third-party discovery in the Florida Litigation at that time, Pliteq could have saved Ecore the burden and expense of having to conduct a second electronic search at a later time.

As to the specific documents sought by the Defendants, according to the Response, after Ecore and Pliteq engaged in negotiations regarding the Pliteq subpoena, Ecore agreed to produce two documents that had been previously produced in the Pennsylvania Litigation: 1) a spreadsheet demonstrating the sales of certain products from Ecore to Marjam from January 2011 through August 2015; and, 2) an email between Ecore employees and Marjam employees that predated the termination of the contract between Marjam and Pliteq, ECF No. [109-3] at 6.  However, Ecore refused to produce the remaining nine documents and refused to perform electronic searches for emails between Arthur Dodge, III and Jim Metcalf from April 12, 2016 through the present.  Ecore contends "[t]hese additional searches would not be necessary if Pliteq had moved its case forward and sought discovery promptly." ECF No. [109-3] at 6.

---

as, unfair competition, misappropriation of trade secret, breach of contract, interference with contractual relations and breach of restrictive covenants.  Paul Downey, CSR Industries, Inc., and Pliteq, Inc.  asserted counterclaims against Ecore and a claim against Arthur Dodge for breach of contract, quantum meruit, promissory estoppel, fraudulent inducement, tortious interference with a contract, patent infringement related to Ecore's QT RBM and QT ATBR Balance Mat product, and NOISE AND VIBRATION MITIGATION MAT, and false marking.

Ecore further argues that Pliteq has failed to demonstrate that the documents sought are relevant to this action, and that the discovery is proportional to the needs of this case, ECF No. [109-3] at 8. On this issue, Ecore argues that the subpoena requests are overbroad and should be limited in time. In addition, Ecore contends that it does not have documents responsive to Requests 2, 3 and 4 for the period between March 17, 2014 and July 10, 2015, ECF No. [109-3] at 9. Ecore further argues that Pliteq's tortious interference counterclaims are unrelated to Ecore, ECF No. [109-3] at 9. Finally, Ecore argues that the requested production would cause an undue burden on Ecore and anticipates that the search and production of emails from April 2016 to the present would cost approximately $2,400.00 in internal costs, and approximately $3,000.00 to hire a vendor to process and Bates number the documents, plus reasonable attorneys' fees for review of the documents to ensure no privileged documents are produced, ECF No. [109-3] at 10.

Ecore thus argues that the Motion to Compel should be denied; but, argues in the alternative, that the Defendants should be sanctioned and assessed the costs of the electronic searches, processing, and Bates numbering of the documents, as well as be required to pay attorneys' fees incurred by Ecore in complying with this Court's Order, ECF No. [109-3] at 11.

In Reply, the Defendants contend that the letter and spirit of the Pennsylvania Litigation protective order has been followed because the documents from that case that are at issue in this case were filed under seal and have not been used in this action, ECF No. [109-4] at 3. In addition, the Defendants assert that it was Ecore that asked Pliteq to identify the documents from the Pennsylvania Litigation that were relevant to the Florida

Litigation.  The Defendants also note the Ecore failed to submit an affidavit to support its

contention that producing the requested documents would cause a burden on Ecore.

     II.       <u>LEGAL FRAMEWORK</u>

       A.  *Subpoenas Issued Pursuant to Rule 45*

Federal Rule of Civil Procedure 45 addresses the issuance and enforcement of

subpoenas.  Subpart (d)(3)(A) of Rule 45 permits a court to quash a subpoena if, among

other things, the subpoena requires disclosure of privileged or other protected matter, if

no exception or waiver applies, or subjects a person to undue burden. Rule

45(d)(3)(A)(iii) and (iv).  Rule 45 further provides,

> (d) Protecting a Person Subject to a Subpoena; Enforcement.
>
> > (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply.

Fed. R. Civ. P. 45(d)(1). Although Rule 45 does not identify irrelevance or overbreadth as

grounds for quashing a subpoena, courts treat the scope of discovery under a subpoena

the same as the scope of discovery under Rule 26. *Am. Fed'n of State, Cnty. & Mun.*

*Employees (AFSCME) Council 79 v. Scott*, 277 F.R.D. 474, 476 (S.D. Fla. 2011) (citations

omitted).  *See also Digital Assurance Certification, LLC v. Pendolino*, No. 6:17-cv-72-Orl-

41TBS, 2017 WL 4342316 *8 (M.D. Fla. Sept. 29, 2017) (stating "The scope of discovery

under Rule 45 is the same as the scope of discovery under Federal Rule of Civil

Procedure 26.")); *Commissariat A L'Energie Atomique v. Samsung Elecs. Co.*, LTD., Case

No. 8:06–mc–44–T–30TBM, 2006 WL 5003562, at *2 (M.D. Fla. June 14, 2006) (noting that

while Rule 45 does not include relevance as an enumerated reason for quashing or

modifying a subpoena, it is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b), Federal Rules of Civil Procedure, and, as a result, a court must examine whether a request contained in a subpoena duces tecum is overly broad or seeks irrelevant information under the same standards set forth in Rule 26(b)).

### B.  *Scope of Discovery Subpoenas Under Rule 26*

Federal Rule of Civil Procedure 26, in turn, provides,

> Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1) (2017).  Although in 2015 Rule 26 was substantively amended, as noted by the court in *Ajibade v. Wilcher*, No. 416-082, 2017 WL 5106608 *2 n 3 (S.D. Ga. Nov. 9, 2017), those changes did not alter the definition of "relevance." Instead, the changes emphasized requirements already present in the Rules, like proportionality. See Fed. R. Civ. P. 26, advisory committee's note to 2015 amendment ("Restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality....").

Thus, amended Rule 26 specifically requires that discovery be proportional to the needs of the case. In making this determination, the court is guided by the non-exclusive list of factors in Rule 26(b)(1). *Digital Assurance Certification, LLC v. Pendolino*, No. 6:17-

cv-72-Orl-41TBS, 2017 WL 4342316 *8(M.D. Fla. Sept. 29, 2017) (citing *Graham & Co., LLC v. Liberty Mut. Fire Ins. Co.*, No. 2:14–cv–2148–JHH, 2016 WL 1319697, at *3 (N.D. Ala. April 5, 2016) ("Any application of the proportionality factors must start with the actual claims and defenses in the case, and a consideration of how and to what degree the requested discovery bears on those claims and defenses.")

Finally, the burden of proof in demonstrating that compliance with a subpoena presents an undue burden lies with the party opposing the subpoena; however, the party seeking to enforce a subpoena bears the burden of demonstrating that the request is relevant. *Fadalla v. Life Auto. Prods., Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. 2007) (citations omitted). In order to determine whether a subpoena imposes an undue burden, the Court must balance the requesting party's need for the discovery against the burden imposed upon the subpoenaed party. *Id.*

III.     ANALYSIS

   A.     *The Requested Documents are Relevant and Their Use in this Litigation Does Not Violate the Pennsylvania Protective Order*

After a thorough consideration of the arguments advanced by the Parties in their briefs, the undersigned concludes that the documents sought by the Defendants' subpoena are relevant to this action, and their use in this litigation does not violate the Pennsylvania Protective Order. For the following reasons, the arguments raised by Ecore to the contrary are unavailing.

First, Ecore generally objects to the documents requested by the Defendants as not being relevant. Specifically, Ecore argues that because the distribution agreement between Marjam and Pliteq was formed on March 17, 2014 and was terminated on July 10, 2015, any documents between Ecore and Marjam after July 10, 2015, are not relevant to Pliteq's breach of contract claim, ECF No. [109-3] at 8.  In addition, Ecore argues that

because Pliteq's tortious interference Counterclaim does not allege that Marjam made false and misleading statements to Ecore, but rather only alleges that Marjam interfered with prospective contractual relationships by making false and misleading statements about Pliteq and Pliteq's products, communications between Marjam and Ecore also are not relevant, ECF No. [109-3] at 9.

However, the Claims raised by Pliteq are clearly broad enough to make any communications between Ecore and Marjam related to Pliteq, and/or its products relevant. Similarly, given the allegations in this case, communications and documents related to the sale of Ecore products by Marjam during or close to the time that the distributorship agreement was in place and/or terminated are also relevant. Indeed, Pliteq generally alleges that Marjam's claims about Pliteq's inferior product are fabricated and are part of a deliberate strategy by Marjam to destroy Pliteq's relationship with its customers and potential customers in retaliation for Pliteq's termination of its distribution agreement with Marjam, ECF No. [218] at 5-7. Thus, Pliteq asserts Counterclaims for Tortious Interference with Pliteq's contracts and potential business, as well as, common law claims for unfair competition, Lanham Act and Copyright Infringement claims, and a Breach of Contract claim, ECF No. [21]. The documents sought by Pliteq from Ecore potentially provide information and evidence to support Pliteq's allegations related to its Counterclaims, given the time frame for the creation and dissemination of those documents and the undisputed claim that Ecore is a competitor of Pliteq whose competing product was allegedly sold by Marjam during at least a portion of the time frame at issue.

On this point, the undersigned notes that Ecore's contention that documents and correspondence created or sent after the July 10, 2015, termination of the distribution

agreement between Marjam and Pliteq are irrelevant is incorrect.  The express allegations in the Defendants' Counterclaims that Marjam tortiously interfered with Pliteq's relationships with its customers through email communications continue through, at least January 11, 2016, ECF. No. [21] at 24.  Moreover, there is no reason to think that simply because the distributorship agreement was terminated in July of 2015, that any subsequent communications between Marjam and Pliteq's competitor necessarily have no relevance to the prior dealings between Marjam and Pliteq, or Marjam's alleged attempt to interfere with Pliteq's business relationships.  This conclusion is not altered by the fact that Ecore and/or its products are only specifically named in the breach of contract Counterclaim. Thus, Pliteq has met its burden of demonstrating that the requested documents are relevant to the claims in this litigation and Ecore has not sufficiently rebutted Pliteq's contention on this point.

In addition, the undersigned declines Ecore's request to strike the nine documents previously produced in the Pennsylvania Litigation that now are at issue in this litigation, and were attached to Pliteq's Motion to Compel.  First, although Ecore contends that the nine documents have been improperly submitted to the Court in this action, those documents were filed under seal as exhibits to the Motion to Compel, were not sent to Marjam and have not been used in any manner in this action, other than to seek to compel documents responsive to the subpoena issued to Ecore. Further, the use of the nine documents was invited by Ecore when, in response to the subpoena, Ecore requested that Pliteq identify the documents that Pliteq was seeking to use from the Pennsylvania Litigation in the Florida Litigation.  Also, as discussed above, the nine documents are clearly relevant and fall within the scope of the subpoena, and thus, it was certainly reasonable for Pliteq to refer to the documents from the prior Pennsylvania

Litigation as documents that were responsive to the subpoena in its Motion to Compel.[5]
Therefore, Ecore's argument that Pliteq violated the Pennsylvania Protective Order by filing those documents under seal in conjunction with the Motion to Compel is entirely without merit.

Moreover, Ecore has provided no authority to suggest that once a document is deemed confidential in one litigation, it may never be sought through discovery procedures for use in another litigation. *See e.g., Mauermann v. Cooper Tire & Rubber Co.,* No 15-14183-CIV-ROSENBERG/LYNCH, 2015 WL 12516630, *1 (S.D. Fla. Sep. 3, 2015) (rejecting litigant's argument that confidentiality order in similar litigation barred use of same discovery in other litigation and stating "Just because a document was produced in a prior litigation does not mean it never can be used again in any later similar litigation. That document continues to exist independently, and if it relates to a different case, it should be produced in that different case.").

Finally, although Ecore contends that the nine documents requested are "objectionable," Ecore has not contended that the specific documents are privileged, but rather only contends that they are subject to the Stipulated Protective Order issued in the Pennsylvania Litigation. There is a Confidentiality and Stipulated Protective Order in this case that serves to offer the same protection to those documents in this case as the Protective Order did in the Pennsylvania Litigation, ECF No. [72].   Thus, the undersigned concludes that the Defendants' attempt to seek production of those documents through discovery for use in this case does not violate the Pennsylvania Protective Order.

---

[5]  This fact also eliminates Ecore's argument that Ecore is being required to unnecessarily re-search for documents that it would not have to do if the request for the documents had been made by Pliteq during the course of the Pennsylvania Litigation.

Accordingly, those documents and any reference to the documents will not be stricken from the Defendants' Motion to Compel.

      **B.**     ***Proportionality of Requested Documents to Needs of Case***

Given the foregoing, it is clear that the Defendants have established that the documents sought are relevant to Pliteq's Claims. However, the Federal Rules specifically direct courts to consider whether the discovery is proportional to the needs of the case considering, among other things, "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Ajibade v. Wilcher*, No. 416-082, 2017 WL 5106608, *2 (S.D. Ga. Nov. 9, 2017) (citing Fed. R. Civ. P. 26(b)(1)).

Here, although the undersigned has concluded that the documents requested in the Ecore Subpoena are relevant, requests number 2, 3, and 4 of the Original Subpoena were too broad given the needs in this case. As noted by Ecore in its objections, those requests did not contain any date restrictions, and sought communications from potentially all Ecore employees and/or custodians, even where the communications may have only dealt with Marjam's selling Ecore products long after the termination of the distributorship agreement with Pliteq. At this point in this action, there is no indication that such broad requests are necessary for the Defendants to adequately litigate their Counterclaims, and Pliteq has, in fact, limited its request to alleviate this concern.

As such, the undersigned finds that the subpoena should be narrowed to only require Ecore to produce the nine documents previously produced in the Pennsylvania Litigation and to conduct a search for communications between Arthur Dodge and Jim Metcalf since Ecore's April 12, 2016 document production in the Pennsylvania Litigation, through March 8, 2017, the date that the subpoena was first issued to Ecore. Such limitations mirror the relief sought by Pliteq in its Motion to Compel. In this regard, Pliteq

has acknowledged that not all of the documents originally sought in the subpoena are necessary for the Defendants to prosecute their claims, and suggested the same limitation in response to Ecore's initial objections to the subpoena. Therefore, the narrowing of the subpoena in this regard serves to strike a balance between the importance of the discovery in resolving the issues in the case, the likely benefit of the proposed discovery, the expense of the proposed discovery, and any burden on Ecore. Thus, the undersigned concludes that the Defendants' Subpoena to Ecore, as narrowed, satisfies the requirements of Rule 26, and the Defendants' Motion to Compel Ecore to comply with that narrowed subpoena should be granted.

### C. *Rule 45 Protecting Person Subject to Subpoena*

Aside from Rule 26, Ecore contends that the Defendants' Motion to Compel should be denied pursuant to Rule 45 because Pliteq did not request documents from Ecore earlier in this litigation when similar requests were being made in the Pennsylvania Litigation, thereby causing Ecore to incur undue burden and expense in responding to the subpoena, ECF No. [109-3] at 10. That argument however also fails.

At the outset, the undersigned notes that Pliteq's request that Ecore search for emails that were sent after the final production in the Pennsylvania Litigation necessarily means that those emails would not have been captured by a contemporaneous request to produce those same documents in the Florida Litigation. The documents presently sought did not exist at the time of the Pennsylvania requests, and thus Ecore's argument automatically fails as to searches for correspondence between Jim Metcalf and Arthur Dodge. Moreover, with respect to the nine documents produced previously in the Pennsylvania Litigation, although, by virtue of its broad discovery request, Pliteq initially sought production of those same documents in this litigation, Pliteq eliminated the

burden on Ecore by specifically identifying the documents from the Pennsylvania search that it sought in the case at bar.  This obviated the need for Ecore to make a "duplicate" search.

Further, Ecore, a non-party in this Florida Litigation, has absolutely no authority to determine how or when any party should conduct discovery in *this* action, other than seeking to recoup the costs incurred in producing that discovery, seeking to minimize the burden on Ecore related to that production, and/or seeking to protect any privileges or confidentiality concerns that Ecore might have related to the production of the requested documents.  It would be entirely unreasonable for this Court to permit non-parties to direct and/or otherwise control the timing, methods and strategies selected by the litigants in this case to conduct discovery. Simply put, Ecore's objections to producing the discovery requested by Pliteq, on the basis of the timing of that request is wholly without merit. The Court is aware of Rule 45's requirement that a Party seek to avoid undue burden or expenses in issuing subpoenas, but that provision is not applicable here.  Rather, the Advisory Committee Notes, by way of illustration, provide that this provision might come into play if a litigant compels an adversary to attend trial as a witness if the adversary is known to have no personal knowledge of matters in dispute, especially so if the adversary would be required to incur substantial travel burdens. (Advisory Committee Notes, 1991 Amendments to Rule 45 (c)(3)(A)(iv)--now Rule 45 (d) by 2013 Amendment).  The facts in the case at bar bear no similarity to the scenario described, and there is no indication that the Defendants herein intentionally delayed seeking the requested discovery knowing that it might arguably cause substantial burdens on Ecore.

Finally, Ecore has failed to demonstrate that producing the subpoenaed documents would cause Ecore undue burden or expense.  Ecore has offered no explanation as to what non-economic burden the compliance with the subpoena would cause.  As to costs, Ecore has estimated that it will cost approximately $2400.00 in internal costs, and approximately $3,000.00 to hire a vendor to process and Bates number the documents, plus reasonable attorneys' fees for review of the documents to ensure no privileged documents are produced, ECF No. [109-3] at 10. However, Ecore has not provided an affidavit to support that estimate, and it is unclear how Ecore arrived at that calculation.  Further, given that the nine documents at issue have already been produced and Bates stamped, it is unclear what, if any, costs Ecore would incur related to the production of those documents.  Given the narrowed scope of the required document search and production, the undersigned anticipates that Ecore's estimate of the overall costs of production may be far less than that set forth in the Response to the Defendants' Motion to Compel.  Therefore, based upon the inadequate and unsupported claim of burdensomeness, and the determination that the narrowly focused discovery requests do not appear to warrant cost-shifting, the request for cost-shifting is denied.

IV.  <u>SUMMARY AND CONCLUSION</u>

Given the foregoing, the undersigned concludes that the Defendants have established that the documents sought are relevant to Pliteq's Claims, and that the subpoena, as narrowed, is proportional to the needs of this case.  In addition, Ecore has failed to demonstrate that the Defendants have violated Rule 45 or the Protective Order in Pennsylvania, and have further failed to demonstrate that the compliance with the subpoena would impose an undue burden or expense upon Ecore. Accordingly, on or before the close of business on Monday, March 26, 2018, Ecore shall produce to

Defendants the nine documents previously produced in the Pennsylvania Litigation and identified in Defendants Pliteq, Inc., and Paul Downey's Motion to Compel Ecore International, Inc.'s Compliance with Subpoena to Produce Documents.

In addition, on or before the close of business on Wednesday, March 28, 2018, Ecore shall conduct a search for documents demonstrating any additional communication between Arthur Dodge, III and Jim Metcalf since Ecore's document production in the Pennsylvania Litigation on April 12, 2016, and March 8, 2017, produce those documents to the Defendants.

Accordingly, it is

**ORDERED AND ADJUDGED** that the Defendants Pliteq, Inc., and Paul Downey's Motion to Compel Ecore International, Inc.'s Compliance with Subpoena to Produce Documents, ECF No. [109-2] [106-2] is **GRANTED.** It is further

**ORDERED AND ADJUDGED** that on or before the close of business on Monday, March 26, 2018, Ecore shall produce to Defendants the nine documents identified in Defendants Pliteq, Inc., and Paul Downey's Motion to Compel Ecore International, Inc.'s Compliance with Subpoena to Produce Documents, as requested in that Motion. It is further

**ORDERED AND ADJUDGED** that on or before the close of business on Wednesday, March 28, 2018, Ecore shall conduct a search for communications between Arthur Dodge, III and Jim Metcalf between April 12, 2016 (the date of Ecore's document production in the Pennsylvania Litigation) and March 8, 2017 (the date of the discovery

**request in the case at bar), and produce those documents to the Defendants.**

       **DONE AND ORDERED** at Miami, Florida, this 23rd day of March, 2018.

                     _____
                     **ANDREA M. SIMONTON**
                     **CHIEF UNITED STATES MAGISTRATE JUDGE**

**Copies furnished via CM/ECF to:**
       **The Honorable Kathleen M. Williams**
       **United States District Judge**
**All counsel of record**