**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 15-cv-24363-WILLIAMS/SIMONTON

MARJAM SUPPLY COMPANY OF FLORIDA, LLC and MARJAM SUPPLY COMPANY,

    Plaintiffs,

v.

PLITEQ, INC. and PAUL DOWNEY,

    Defendants,

---

PLITEQ, INC. and PAUL DOWNEY,

    Counter-Plaintiffs,

v.

MARJAM SUPPLY COMPANY OF FLORIDA, LLC; MARJAM SUPPLY COMPANY; AND JIM METCALF,

    Counter-Defendants.

## PLITEQ, INC. AND PAUL DOWNEY'S MOTION AND MEMORANDUM FOR ATTORNEYS' FEES

Defendants/Counter-Plaintiff Pliteq, Inc. and Counter-Plaintiff Paul Downey (collectively, "Pliteq"), through undersigned counsel, hereby move on the following grounds for an award of attorneys' fees against Plaintiffs/Counter-Defendants Marjam Supply Company and Marjam Supply Company of Florida (collectively, "Marjam").

## INTRODUCTION

On May 18, 2018, Final Judgment was entered in favor of Pliteq, dismissing all counts of the Complaint filed by Marjam and awarding Pliteq compensatory and punitive damages in the amount of $1,110,000 on Counts II, III, and IV of Pliteq's Counterclaims. The Judgment ended Marjam's ill-conceived attempt to harm Pliteq's business through the filing of a baseless lawsuit, which Marjam improperly used in its public campaign to smear Pliteq and its business. As the prevailing party on Marjam's FDUTPA claim and both sides' Lanham Act claims, Pliteq is entitled to an award of attorneys' fees.

## BACKGROUND

On November 24, 2015, Marjam filed an eight-count complaint against Pliteq, the crux of which accused Pliteq of fraudulent conduct in violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count I) and the Lanham Act (Count II). (D.E. 1). Marjam also brought an assortment of breach of warranty (Counts III-V), breach of contract (VII-VIII), and common-law fraud (Count VI) claims, all of which were grounded on the same facts and circumstances as their FDUTPA and Lanham Act claims. (D.E. 1). The thrust of Marjam's allegations was that Pliteq had misrepresented and falsely advertised its GenieMat sound reduction products, which Marjam claimed were thinner than specified.

Pliteq disputed the claims and in response, asserted counterclaims against Marjam for false advertising under the Lanham Act, and common law unfair competition, and tortious interference. (D.E. 21).

On April 23, 2018, after two-and-half years of litigation, the Court granted Pliteq's motion for summary judgment in part, dismissing Marjam's FDUTPA, Lanham Act, and common law fraud claims against Pliteq and Paul Downey individually. (D.E. 247). The Court also granted in

part Marjam's motion for summary judgment, dismissing Pliteq's counterclaims for tortious interference with contract and copyright infringement. Upon entry of that Order, Marjam's claims for breach of warranty (Counts III-V) and for breach of contract (Count VII) remained for trial, along with Pliteq's counterclaims for tortious interference with prospective business relationship (Count II), false advertising under the Lanham Act (Count III), unfair competition (Count IV), and breach of contract (Count V).

Trial began on Monday, April 30, 2018 and concluded with the return of the jury's verdict on Wednesday, May 9, 2018. During the eight-day trial, and throughout the course of the litigation, Marjam needlessly, unreasonably, and vexatiously multiplied the proceedings. As but one example, it moved after the close of its case-in-chief to amend its breach of contract claim, recognizing that the basis of the claim as pled was entirely unsupported and contradicted by the established facts. Its alternative theory, however, was just as baseless, and directly contradicted by the testimony of its next witness, Jim Metcalf.

At the close of the evidence, the Court entered judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) against Marjam on all of its remaining claims. Pliteq's counterclaims for tortious interference, false advertising under the Lanham Act, and unfair competition then went to the jury.[1] The jury returned a verdict finding liability against Marjam on all three counts, awarding Pliteq compensatory damages in the amount of $310,000, and assessing punitive damages against Marjam in the amount of $800,000. (D.E. 286). Final judgment was entered on May 18, 2018. (D.E. 291).

---

[1] Pliteq voluntarily dropped its counterclaim for breach of contract, which was never a focus of the litigation.

## ARGUMENT

Because Pliteq was the prevailing party against Marjam on Marjam's FDUTPA and Lanham Act claims, as well as on its own Lanham Act claim against Marjam, Pliteq is entitled to an award of attorneys' fees under Fla. Stat. § 501.2105 and 15 U.S.C. § 1117(a), respectively. Pliteq believes that it is entitled to recover the remainder of the fees incurred, both pretrial and through the course of trial. The issues and work involved in defending against Marjam's FDUTPA and Lanham Act claims, and in pursuing Pliteq's counterclaims for tortious interference, false advertising under the Lanham Act, and unfair competition are all inextricably intertwined, in fact and law, and are therefore recoverable under the applicable theories. In the alternative, if the Court determines that fees incurred at trial defending against Marjam's breach of warranty and contract claims and pressing Pliteq's breach of contract claim (which Pliteq dropped) do not trigger any entitlement to fees, and Pliteq has presented an alternative allocation, reducing those amounts from the claim. Additionally, Pliteq has allocated out the limited fees incurred for its copyright infringement claim.

### A.  **Pliteq is Entitled to Attorneys' Fees Under FDUTPA.**

In FDUTPA actions, "[t]he trial judge may award the prevailing party the sum of reasonable costs incurred in the action plus a reasonable legal fee for the hours actually spent on the case as sworn to in an affidavit." § 501.2105(3), Fla. Stat. (2018). By invoking FDUTPA, Marjam "exposed [itself] to both the benefits and the possible consequences of that act's provisions." *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 369 & n.7 (Fla. 2013). For example, in *Diamond Aircraft*, the Florida Supreme Court held that a plaintiff who filed a FDUTPA claim was nevertheless liable for the defendant's fees under FDUTPA even though the trial court ruled that FDUTPA did not govern the plaintiff's claim. *Id.*

Here, there is no doubt that Pliteq is the prevailing party under FDUTPA. Marjam invoked the provisions of FDUTPA, and its FDUTPA claim was dismissed at summary judgment for lack of standing. (D.E. 247). "A defendant who prevails in a motion to dismiss based on lack of standing is a 'prevailing party' for the purposes of § 501.2105." *Big Tomato v. Tasty Concepts, Inc.*, 972 F. Supp. 662, 664 (S.D. Fla. 1997) (citing *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 30 F.3d 113 (11th Cir. 1994)).

Because Pliteq is the prevailing party under FDUTPA, this Court has discretion to award attorneys' fees and costs after considering various equitable factors, including:

1. the scope and history of the litigation;

2. the ability of the opposing party to satisfy an award of fees;

3. whether an award of fees against the opposing party would deter others from acting in similar circumstances;

4. the merits of the respective positions—including the degree of the opposing party's culpability or bad faith;

5. whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless;

6. whether the defense raised a defense mainly to frustrate or stall;

7. whether the claim brought was to resolve a significant legal question under FDUTPA law.

*See Chow v. Chak Yam Chau*, 640 F. App'x 834, 838–39 (11th Cir. 2015).

The balance of factors weighs in favor of a fee award to Pliteq. Marjam's FDUTPA claim was an original claim brought in this case. As this Court found, Marjam had no legal basis for pleading its claims for injunctive relief or lost profits under FDUTPA, but did so anyway, and only abandoned its "actual damages" claim under FDUTPA when faced with Pliteq's meritorious summary judgment motion. (D.E. 247).  Because Marjam is admittedly a billion-dollar company

5

and can satisfy a fee award, imposing fees would deter other groundless suits. To that end, Pliteq's meritorious defenses resulted in summary judgment on Marjam's FDUTPA claim, another factor weighing in favor of a fee award. And as the jury's punitive damages against Marjam showed, Marjam acted in bad faith by making false representations about the quality of Pliteq's product to Pliteq's prospective customers. (D.E. 286). An attorneys' fees award is therefore appropriate from the date of filing the initial complaint, until the issuance of the April 23, 2018 Order.

### B. Pliteq is Entitled to Attorney's Fees under the Lanham Act

The Lanham Act authorizes a fee award to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). Pliteq is the prevailing party, both as to its own Lanham Act claim and Marjam's Lanham Act claim. (D.E. 247; 286). The only question, then, is whether this case is "exceptional." The answer is yes.

Until the Supreme Court's 2014 decision in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), courts interpreted the Lanham Act's "exceptional" case provision as requiring evidence of malice, fraud, or bad faith. *See Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, No. 13-21604-CIV, 2017 WL 3610583 at *3 (S.D. Fla. Aug. 11, 2017). In *Octane Fitness*, the Supreme Court both relaxed the standard and "substantially changed the analysis" for showing a case's "exceptional" status. *Fla. Int'l Univ. Bd. Of Trustees* at *3 (quoting *Octane Fitness*, 134 S. Ct. at 1756).

Under the *Octane Fitness* standard, as adopted by the Eleventh Circuit in *Tobinick v. Novella*, 884 F.3d 1110 (2018), the statutory term "exceptional case" means one that "stands out from others, either based on the strength of the litigating positions or the manner in which the case was litigated." *Id*. at 1118 (quoting *Octane Fitness*, 134 S. Ct. at 1756).

This case "stands out" under *Octane Fitness* because Marjam failed to recognize the weakness of its own Lanham Act claim and litigated unreasonably in defending against Pliteq's Lanham Act claim. In addition, the jury's punitive damage award confirms that Marjam's misconduct in falsely impugning Pliteq's products and advertisements goes well beyond the normal case.

As to the weakness of its own case, Marjam could not even establish standing to bring a Lanham Act claim against Pliteq under recent and directly controlling Supreme Court precedent (D.E. 247); *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1390 (2014) ("even a business misled by a supplier into purchasing an inferior product is . . . not under the [Lanham] Act's aegis"). As the Supreme Court noted in *Octane Fitness*, a case may "stand out" if it is substantively weak under governing law:

> An "exceptional" case, then, is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.

*Octane Fitness*, 134 S. Ct. at 1756.

Marjam's case was equally weak on the evidence. From the start, Marjam maintained that it received "mislabeled" or "defective" Pliteq GenieMats from a manufacturer called Ultimate RB ("URB"). (D.E. 1). Indeed, Marjam's entire theory of its case, and each of its claims individually, relied on Marjam's receipt of the URB product. (D.E. 1). Yet at no point in the case could Marjam offer any evidence that it actually received any URB manufactured product. No documents and no testimony from any witnesses was ever presented by Marjam on this point. Instead, Marjam deliberately and stubbornly disregarded the uniform, uncontradicted evidence that it never had received any product from URB. The uncontroverted testimony by Paul Downey at deposition and trial, corroborated by documentary evidence, confirmed that Marjam only received GenieMat

7

product manufactured by a German company named Kraiburg, whose product quality was never challenged by Marjam. In fact, at trial, Mr. Downey explained that even the labels on the GenieMat rolls Marjam photographed from its inventory had German wording on them, further confirming that they came from Kraiburg and not URB.

In addition to the utter absence of proof that it received URB product, Marjam also entirely failed to present evidence to substantiate its claims that Pliteq's product was thinner than specified, and thus falsely advertised. Again, the uncontradicted testimony of Paul Downey at deposition and trial, corroborated by documentary evidence, confirmed that the specifications for Pliteq's products are accurately advertised.

The unreasonable manner in which Marjam litigated its claims and defenses also marks this case as "exceptional" under *Octane Fitness* and *Tobinick*. In *Fla. Int'l Univ. Bd. Of* Trustees, Judge Simonton noted the following factors relating to whether a party's conduct was unreasonable:

> 1. Establishing that the plaintiff failed to conduct an adequate pre-filing investigation before … filing suit;
> 2. Showing the plaintiff should have known its claim was meritless and/or lacking substantive strength;
> 3. Evidencing the plaintiff initiated litigation to extract settlements from defendants who want to avoid costly litigation;
> 4. Showing a party proceeded in bad faith (noting that bad faith is no longer required to support an award of fees but finding the plaintiff's position was not reasonable); and
> 5. Litigation misconduct.

*Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, No. 13-21604-CIV, 2017 WL 3610583 at *4 (internal citation omitted).

These factors are satisfied here. Marjam relied blindly on information provided to it by Ecore and its principal, Art Dodge, without conducting any pre-filing investigation of its own. Then, time and again, Marjam took legal positions that were directly and clearly contradicted by

the evidence and continued to litigate until this Court dismissed their claims, rather than abandoning them. Marjam should have known that its Lanham Act claim was legally meritless before filing suit. And, Marjam's defense of Pliteq's Lanham Act claim was not only meritless, but often weak, in bad faith, or directly contradicted by its own evidentiary admissions.

Consider two related examples about the completely unfounded allegation at the heart of all of Marjam's claims in this case – that Pliteq "mislabeled" its GenieMat product. First, Marjam argued *for years* that it suffered financial harm because it could not sell "mislabeled" Pliteq product to ZOM, before finally admitting that it had (in this Court's words) "*untraceabl[y] dispos[ed] of those mats*" through resale. (D.E. 247) (emphasis added). If that were not enough, secondly, Marjam compounded its misrepresentation by arguing, in its summary judgment motion on Pliteq's Lanham Act claim, that its misrepresentations to third parties were protected as non-commercial because of Marjam's purported concern about its potential liability for selling "mislabeled" GenieMat product. (D.E. 170-71). This Court saw through – and rejected – Marjam's position based on the evidence, specifically Marjam's *admission*, that it continued to sell Pliteq's products "even after it learned of the alleged mislabeling issues." (D.E. 247).

Additionally, Marjam persisted in prosecuting claims that it knew were unsupported by the evidence, and falsely pled. From the time the Complaint was filed up until its opening statements, Marjam's position had been that it took delivery of 256,000 square feet of GenieMat RST12 for use at the Met 3 Project and delivered the product to Met 3, but that it was then rejected by Met 3 and returned to Marjam. (D.E. 1). The delivery and return of this product, throughout the litigation, was the basis for Marjam's breach of contract claim, as well as its damages. (D.E. 1, ¶ 18 and 21.) Based on Marjam's own admissions at deposition and trial, however, there was no written purchase order for the product, Marjam never took delivery of the product, and Marjam never paid for it;

9

certainly, the product was never delivered to Met 3, and it was never returned. (Metcalf, 30(b)(6) Deposition at 149:24-152:18). Thus, the Complaint was fundamentally false.

Relentlessly pursuing this claim, though, on Thursday, May 3, 2017, the fourth day of trial, Marjam advised the Court that it desired to proceed on an alternate theory of liability, *i.e.*, that Jim Metcalf made a verbal purchase order for GenieMat RST 12 to Pliteq, and Pliteq breached that verbal purchase order by failing to deliver the product. Not only was this new theory contrary to the Complaint; it was also contrary to Jim Metcalf's sworn testimony, which he reiterated as the next witness on the stand, that Marjam *cancelled* the purchase order. Thus, Pliteq did not breach the purchase order by failing to deliver product. Marjam's claim was unfounded, and its desperate attempt to amend during trial was a sham.

At bottom, the evidence developed through discovery and at trial demonstrated that Marjam brought this litigation, including its Lanham Act claims, in bad faith and as a pretense to interfere with Pliteq's business. It did so at the urging, and with the support of Art Dodge, the principal of Ecore, Inc. – Pliteq's competitor. Thus, Marjam touted that, under "Art Dodge's legal umbrella," it was pursuing a "blitzkrieg attack" against Pliteq for "mega damages," and seeking to "cripple the king" – an admitted reference to Pliteq's principal, Paul Downey. The jury's verdict, as well, confirmed this by including a substantial award of punitive damages against Marjam, based on clear and convincing evidence that Marjam was guilty of intentional misconduct, warranting punishment.

C. **The Amount of Fees and their Allocation.**

Pliteq incurred total fees in the litigation in the amount of $2,065,119.30[2]. The fees include

---

[2] This is an interim number, and Pliteq intends to supplement the application with additional invoices when appropriate.

$1,064,774.50[3] in fees billed by Coffey Burlington, P.L.; $203,261 billed by Groisman PLLC;[4] and $797,083.80[5] in fees billed by Brinks Gilson. The hours and rates for the specific lawyers at each firm who worked on the matter are set forth in detail in the Fee Chart attached hereto, as Exhibit "A." The detailed billing records for all of the fees incurred are also attached hereto as Exhibits "B"-"D." The declarations of Kevin C. Kaplan, Gabriel Groisman and Jon Beaupre are attached as well, as Exhibits "E", "F" and G.[6] Pliteq also relies on the Declaration of Harry R. Schafer, its expert witness, which is attached as Exhibit H. These supporting records fully evidence the amount of fees incurred, and support the reasonableness of the amounts and rates.

Of the total fees incurred, Pliteq seeks to recover $2,050,019.30. This is the total amount of fees, less work done on the copyright claim. Alternatively, in the event time incurred in defending Marjam's claims for breach of warranty and breach of contract are held not to be intertwined, Pliteq presents an alternative allocation below, without those fees.

### 1. *The Fees of the Three Involved Law Firms Are Recoverable.*

As an initial matter, the fees of all three law firms involved in the representation are recoverable. Brinks Gilson served as primary counsel in the case, from the inception until May of 2017, when Coffey Burlington appeared (D.E. 75 & 76). Brinks Gilson has a retainer agreement with Pliteq providing for its hourly fees with rates. Coffey Burlington then assumed an active role in the case, through the remainder of discovery and trial, with Brinks Gilson formally moving to withdraw in March of 2018 (DE 211). Coffey Burlington likewise has a fee agreement with Pliteq,

---

[3] This figure includes $39,263 in discounts, as reflected in the invoices for November 2017, January 2018 and April 2018.
[4] This includes invoices from January to April 2018.
[5] This figure includes $58,449.75 in discounts, as reflected in the Ex. K. The retainer letters for Brinks Gilson are attached as Exhibit I.
[6] Attorney bios from Coffey Burlington's website are attached as Exhibit L. Attorney biographies for Brinks Gilson are attached hereto as Exhibit J.

11

establishing the hourly rates. The hourly rates of the various attorneys are set out in the invoices submitted with this Motion. The firms, of course, coordinated work and shared information, but did so efficiently, without duplicating work. In early 2018, Mr. Groisman, a partner at Coffey Burlington actively involved in the representation, left to form his own firm, and his role in the case continued through the Groisman Law Firm, as co-counsel with Coffey Burlington in the representation through trial.

### 2. *The Issues for Which Fees Are Awardable Were Intertwined.*

As detailed below, Pliteq has reduced the amount of its claimed fees based on amounts allocated to Pliteq's unsuccessful copyright claim and its defense of Marjam's claims for breach of warranty and breach of contract. Beyond that, the issues involved in Pliteq's prosecution of its Lanham Act Counterclaim and its other counterclaims for tortious interference with potential business, unfair competition, and breach of contract were inextricably intertwined.[7] Allocation, therefore, is not feasible and not appropriate.

The jury verdict itself confirms this. Based on findings of liability on each of Pliteq's three counterclaims, the jury then made a single award of damages for the claims. The structure of the verdict, and the jury's award, demonstrates that the damages – as well as the underlying issues – were intertwined. "Where all theories derive from a common core of operative facts, the focus should be on the significance of overall results as a function of total reasonable hours." *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988). The same evidence supported liability and damages on each of the three claims. The theories all turned on Marjam's false statements and malicious intent, and the resulting impact of that misconduct on

---

[7] The tortious interference with contract claim, upon which the Court granted summary judgment, and the breach of contract claim, which Pliteq dropped, are also inextricably intertwined for the same reasons.

Pliteq's business, culminating in the lost profits from the expected sales of its GenieMat products on projects constructed by Kast. Under these circumstances, attorneys' fees should be awarded as to the entire action.

FDUTPA is even more expansive. In *Diamond Aircraft*, the Florida Supreme Court ruled that FDUTPA's fee provision expansively applies, except for attorneys' fees claims that are "clearly unrelated" to the FDUTPA claim. 107 So. 3d 362. In *Alhassid v. Bank of America, NA.*, 688 Fed. App'x. 753, 759 (11th Cir. 2017), the Court noted that the non-FDUTPA claims in that case were related in some way to the FDUTPA claim, and fees could be properly awarded as to them. In *Procaps, S.A. v. Patheon, Inc.*, Case No. 12-24356, 2017 WL 3536917, at *28 (Fla. S.D. Fla. 2017), the Court awarded costs for the entire action, where claims were brought under both FDUTPA and the Sherman Act shared a "common core of facts and a related legal theory."

More generally, the issues involved in Pliteq's prosecution of its Counterclaims were inextricably intertwined with its successful defense against Marjam's claims, which were dismissed at summary judgment. Allocation, therefore, is not feasible and not appropriate. The thrust of Marjam's allegations in support of those claims was that Pliteq had misrepresented and falsely advertised its GenieMat sound reduction products, which were allegedly thinner than specified. Pliteq's Counterclaims asserted, to the contrary, that its products were exactly as specified, and that Marjam's claims were false. Simply put, the evidence Pliteq developed throughout the course of discovery and litigation to prove its Counterclaims was exactly the same evidence that defeated Marjam's claims. "In [some] cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims.

Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S. Ct. 1933, 1940, 76 L. Ed. 2d 40 (1983). "Claims . . . presented as alternative theories that could support a verdict" do not require allocation. *Davis v. Locke*, 936 F.2d 1208, 1214 (11th Cir. 1991). Similar to this case, the Court in *Costa v. Datapro, Inc.*, No. 10-23172-CIV, 2012 WL 591307, at *5 (S.D. Fla. Feb. 22, 2012) stated, "sometimes, the underlying conduct will be the same for the compensable and that non-compensable claims, which will translate into a finding that it is impossible to apportion the work performed on the different claims. For example, in this situation, I find that Datapro's common law counterclaims were so inextricably intertwined with its Lanham Act and FUTSA claims that it is not possible to make a meaningful adjustment for the work done on each claim." Following these authorities, Pliteq is entitled to recover all of the associated fees, under section 1117(a), for prevailing on its Lanham Act Counterclaim and in defense of the FDUTPA claim.[8]

### 3. *The Allocation of Fees Related to the Copyright Claim.*

The claimed amount reflects a reduction for fees allocated to Pliteq's copyright infringement claim, which was dismissed at summary judgment. As set forth in the declaration of Jon Beaupre, based on a detailed review of the Brinks Gilson time records, a total of less than $8,000 in time was spent on the copyright claim, including analysis and preparation of the claim in the initial pleadings, preparation and review of initial discovery, and focused questioning of James Metcalf at his May 17, 2017 deposition. Time was also incurred at the summary judgment stage, responding to the arguments raised by Marjam against the copyright claim in its Motion for

---

[8] Pliteq presents an alternative allocation of fees up through the entry of summary judgment as the prevailing party under FDUPTA and on Marjam's false advertising claim.

Summary Judgment. That work was performed by Gabriel Groisman on January 22-23, 2018. Those time entries and the corresponding charges in the amount of $3350 have been deducted from the claim. The full amount of the charges was deducted, although Mr. Groisman's work in preparing the opposition to Marjam's motion also addressed other issues. David Zack also addressed the Copyright claim in response to Marjam's summary judgment motion and $950 (two hours at $475 per hour) has likewise been deducted.

An additional deduction was made in the amount of $2800, for work related to the copyright claims in preparation of draft jury instructions. The time was primarily incurred by Frances Blake (4 hours at $300 an hour, totaling $1200), a Coffey Burlington associate, as well as time incurred by Kevin Kaplan, David Zack and Gabriel Groisman (estimated, on the high side, at one hour each, for a combined total of $1600) for their review of the copyright instructions. No further work was performed related to the copyright claim after that point. Thus, a total of $15,100 is deducted for the Copyright claim, for a total claimed amount of $2,050,019.30.

### 4. *The Alternative Allocation of Fees for Marjam's Breach of Warranty and Contract Claims.*

If Marjam's Breach of Warranty and Contract claims ("Marjam Claims") are deemed not to be intertwined with the other claims (and Pliteq contends they are), Pliteq has analyzed the amount of fees that relate to the Marjam Claims, as an alternative allocation. While overlap certainly existed between the issues and legal work related to Pliteq's defense of the Marjam Claims and its prosecution of the Counterclaims, the presentation of the case at trial involved some separation of the two sets of claims. Thus, Marjam's case-in-chief, which was limited to two witnesses, Mark Buller and James Metcalf, and lasted approximately one trial day, focused specifically on the Marjam Claims.

Based on Pliteq's assessment, the split of time at trial – with one of the eight trial days

allocated to the Marjam Claims – provides an appropriate formula for assessing the percentage of time throughout the course of the matter that should fairly be allocated to the Marjam Claims, and thus not included as part of Pliteq's recoverable fees. That translates to a reduction of the fees by 1/8 or 12.5%. In order to ensure that the allocation is appropriate, Pliteq proposes a further reduction of its fees by a factor of 15% or $307,502.90 (based on $2,050,019.30), if the Court determines that such claims are not intertwined with the FDUTPA and Lanham Act claims.[9]

Accordingly, the amount of fees recoverable by Pliteq under section 1117(a), as the prevailing party on its Lanham Act Counterclaim, after appropriate reductions for amounts allocated to the unsuccessful copyright infringement Counterclaim and the Marjam Claims, is $1,742,516.40.

### 5. *Allocation of Fees for Marjam's FDUPTA and Lanham Act Claims.*

As set forth above, Pliteq is entitled to recovery of fees in the amount of $2,050,019.30 under section 1117(a), as the prevailing party on its Lanham Act Counterclaim. Those fees include all fees incurred by Pliteq in defending against Marjam's FDUPTA and Lanham Act Claims, through summary judgment, which is inexorably intertwined.

Alternatively, if fees were separately awarded to Pliteq as the prevailing party on Marjam's FDUPTA and false advertising claims, the amount would be limited to fees incurred through the entry of summary judgment on April 23, 2018. This would amount to $1,803,373.73, minus the $15,100 for the Copyright claim, which equals $1,788,273.73. Additionally, the amount might, if the court does not find that such claims were intertwined, be reduced by a factor of 15% per the analysis in the preceding section ($268,241.06, based on $1,788,273.73) for work allocated to the

---

[9] The 15% factor also covers the negligible amount of time, if any, that Pliteq spent on its breach of contract claim, which was never a focus of the litigation effort.

Marjam Claims for breach of warranty and contract and Pliteq's breach of contract claim. Otherwise, as set forth above, all of Pliteq's work involved issues that were inexorably intertwined, and no allocation is possible or appropriate. The total, therefore, allocated to the FDUTPA claim would be $1,520,032.67.

### 6. Costs Under FDUTPA

The determination of recoverable costs under FDUTPA is broader than under 28 U.S.C § 1920. *HRCC, Ltd. v. Hard Rock Café International (USA), Inc.*, Case No. 6:14-cv-2004-Orl-40KRS, 2018 WL 1863778, *9 (M.D. Fla. March 26, 2018). "Such litigation expenses are recoverable if they are reasonable and related to the litigation." *Id.* Here, Marjam has incurred mediation expenses of $5200,[10] expert witness expenses of $156,825.29[11] and travel expenses of $4076.01[12] Such expenses are reasonable and related to the litigation. *See* HRCC.

### CERTIFICATE OF CONFERENCE

Pursuant to Southern District of Florida Local Rules 7.1 and 7.3, the undersigned counsel confirm that they conferred with counsel for Marjam to resolve the issues set forth in this motion, but were unable to do so. Furthermore, Pliteq served a draft of this motion in compliance with

---

[10] BG invoice for 6/30/2017 for $2500, Ex. D hereto, and CB invoice for 2/28/18 for $2700, Exhibit B hereto.

[11] The expert witness expenses are for the firm of damages expert W. Todd Schoettelkotte. The expenses are set forth in Exhibit M, which comprises his invoices. The expenses are as follows: 6/8/17 invoice: $38,625, 7/12/17 invoice: $22,350, 8/1017 invoice: $6,587.50, 9/15/17 invoice: $23,800, 4/12/18 invoice: $30,900, 5/9/18 invoice: $34,563.15. The sum from the May 9, 2018 invoice was reduced by half to reflect that the summary judgment date on the FDUTPA claim of April 23, 2018 so that work after that date would not be counted.

[12] The travel expenses are as follows: BG invoice 6/29/17 $1352.56 (travel for Reiss and Metcalf depos.), BG 7/28/17 invoice $1129.10 (travel for Horan Depo.) and $759.67 (travel for Mediation), BG 12/8/17 invoice $92.05 (travel Metcalf and Reiss depos. And discovery hearing), BG 2/23/18 invoice $1352.56 (travel for Schoettlekotte depo.) *See* Ex. D hereto.

Rule 7.3. Undersigned counsel also requested from Marjam's counsel if there was any amount of fees that Marjam would stipulate to be awarded, but Marjam declined to so stipulate.

## CONCLUSION

For these reasons, Pliteq is entitled to an award of attorneys' fees in the amount of $2,050,019.30. Pliteq also seeks litigation expenses of $166,101.30 under FDUTPA.

Respectfully submitted,

By: s/ Kevin C. Kaplan
Kevin C. Kaplan, FBN 933848
kkaplan@coffeyburlington.com
David J. Zack, FBN 641685
dzack@coffeyburlington.com
Coffey Burlington, P.L.
2601 South Bayshore Drive, PH 1
Miami, Florida 33133
Telephone: (305) 858-2900
Facsimile: (305) 858-5261
**Secondary:** yvb@coffeyburlington.com
**Tertiary:** service@coffeyburlington.com

Gabriel Groisman, FBN 25644
gabriel@groismanlaw.com
Groisman, PLLC
3323 NE 163 St., Suite 508
N. Miami Beach, Florida 33160
Telephone: (305) 930-7979

*Counsel for Defendants/Counter-Plaintiffs*
*Pliteq, Inc. and Paul Downey*

Case No. 15-cv-24363-WILLIAMS/SIMONTON

## VERIFICATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 13, 2018.

s/ Kevin C. Kaplan

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 13, 2018, I served the foregoing to the counsel on the attached service list via email.

s/ Kevin C. Kaplan

| Service List ||
|---|---|
| **Lawrence J. Sharon, Esq.**<br>   (admitted *pro hac vice*)<br>Lawrence.sharon@Lsandspc.com<br>**Alan M. Lebensfeld, Esq.**<br>   (admitted *pro hac vice*)<br>Alan.lebensfeld@Lsandspc.com<br>**Brett R. Schwartz, Esq.**<br>   (admitted *pro hac vice*)<br>Brett.schwartz@Lsandspc.com<br>LEBENSFELD SHARON &<br>   SCHWARTZ, PC<br>140 Broad Street<br>Red Bank, NJ 07701<br>Telephone:   (732) 530-4600<br>Facsimile:<br>Secondary:<br><br>*Counsel for Plaintiffs/Counter-Defendants Marjam Supply Company of Florida, LLC and* | **Joseph John Farina, Esq.**<br>jfarina@boyesandfarina.com<br>BOYES & FARINA, P.A.<br>3300 PGA Boulevard, Suite 600<br>Palm Beach Gardens, FL 33410<br>Telephone:   (561) 694-7979<br>Secondary:   jfarina@BFMlaw.com<br>           jdaily@BFMlaw.com<br>           kjudd@BFMlaw.com<br><br>*Counsel for Plaintiffs/Counter-Defendants Marjam Supply Company of Florida, LLC and Marjam Supply Company* |

| | |
|---|---|
| *Marjam Supply Company* | |
| **Stephanie Reed Traband, Esq.**<br>srt@lklsg.com<br>LEVINE KELLOGG LEHMAN SCHNEIDER & GROSSMAN LLP<br>201 South Biscayne Boulevard<br>22nd Floor, Miami Center<br>Miami, Florida 33131<br>Telephone: (305) 403-8788<br>Facsimile: (305) 403-8789<br>Secondary: lv@lklsg.com<br><br>*Co-counsel for Plaintiffs Marjam Supply Company of Florida, LLC and Marjam Supply Company and Counter-Defendant Jim Metcalf* | |